[No. A062385. First Dist., Div. Three. Sept. 9, 1994.]

ANTHONY FREITAS et al., Plaintiffs and Appellants, v.
COUNTY OF CONTRA COSTA et al., Defendants and Respondents.

164

**COUNSEL**

Ralph Murphy and Philip J. Bertenthal for Plaintiffs and Appellants.

Victor J. Westman, County Counsel, and Kevin T. Kerr, Deputy County Counsel, for Defendants and Respondents.

## OPINION

**WHITE, P. J.**—This appeal challenges a Contra Costa County Board of Supervisors resolution which establishes lower general assistance payments for parents who live with their adult children and adult children who live with their parents. In effect, the resolution reduces payments to recipients who live with "legally responsible" relatives, and presumptively includes adult children and the parents of adult children within the definition of "legally responsible" relatives. Appellants[1] contend the Welfare and Institutions Code limits the scope of legally responsible relatives to spouses and the parents of *minor* children. Consequently, appellants conclude the board of supervisors exceeded its authority when it defined legally responsible relatives to include adult children and their parents. We agree with appellants' argument. Because the trial court found to the contrary, we reverse the judgment.

### BACKGROUND

The Welfare and Institutions Code[2] imposes a duty on each county to "relieve and support" the indigent and disabled within its jurisdiction. (§ 17000; *Oberlander* v. *County of Contra Costa* (1992) 11 Cal.App.4th 535, 538 [15 Cal.Rptr.2d 182].) Payments made pursuant to this duty are commonly referred to as "general assistance." (See *Oberlander, supra,* at pp. 538-539.) Until 1991, counties were required to set general assistance payments at a level which was sufficient to provide recipients with "minimum subsistence," which includes housing, food, clothing, transportation and medical care. (*Boehm* v. *Superior Court* (1986) 178 Cal.App.3d 494, 501-502 [223 Cal.Rptr. 716].) Moreover, in order to determine that amount, the county had to conduct a factual study of what was necessary for minimum subsistence in the jurisdiction. (*Id.,* at p. 501; *Oberlander, supra,* at pp. 541-542.) Courts repeatedly disapproved benefit standards which were not supported by the requisite factual study. (*Oberlander, supra,* at p. 542; *Whitfield* v. *Board of Supervisors* (1991) 227 Cal.App.3d 451, 460-461 [277 Cal.Rptr. 815]; *Guidotti* v. *County of Yolo* (1989) 214 Cal.App.3d 1552, 1566 [271 Cal.Rptr. 858]; *Poverty Resistance Center* v. *Hart* (1989) 213 Cal.App.3d 295, 307 [261 Cal.Rptr. 545].)

However, in 1991 the Legislature enacted section 17000.5 to create a safe harbor for counties by specifying that general assistance equivalent to 62

---

[1]Although Anthony Freitas is the only named plaintiff-appellant in this case, the action was certified as a class action. Consequently, we use the plural term "appellants" to refer to Freitas and the class he represents.

[2]Unless otherwise indicated, all further statutory references are to the Welfare and Institutions Code.

percent of the federal poverty level was a " 'sufficient standard of aid' " that need not be justified by a factual study. (*Oberlander* v. *County of Contra Costa, supra*, 11 Cal.App.4th at pp. 539, 542.) As amended in 1992, section 17000.5 provides in pertinent part: "(a) The board of supervisors in any county may adopt a general assistance standard of aid, including the value of in-kind aid, that is 62 percent of a guideline that is equal to the 1991 federal official poverty line and may annually adjust that guideline . . . . [¶] (b) The adoption of a standard of aid pursuant to this section shall constitute a sufficient standard of aid. [¶] (c) For purposes of this section, 'federal official poverty line' means the same as it is defined in subsection (2) of Section 9902 of Title 42 of the United States Code."

The federal official poverty line for 1991 was set at varying dollar amounts based upon the size of the "family unit." Thus, for an individual (family unit of one) the poverty line was $6,620, for a family unit of two $8,880, for a family unit of three $11,140, and so on. (U.S. Dept. of Health and Human Services [HHS] Annual Update of the HHS Poverty Income Guidelines [Guidelines], 56 Fed.Reg. 6859-6860 (Feb. 20, 1991); *Oberlander* v. *County of Contra Costa, supra*, 11 Cal.App.4th at p. 539.) The pertinent federal guideline defines "family" as "a group of two or more persons related by birth, marriage, or adoption who live together; all such related persons are considered as members of one family."[3] (Guidelines, *supra*, 56 Fed.Reg. 6860.)

The year after it enacted the safe harbor provision of section 17000.5, the Legislature enacted section 17001.5 to make it clear that counties could reduce aid to recipients who were living in shared housing with *unrelated* persons or persons who were related but *not legally responsible* for the recipient. Subdivision (a)(2) of section 17001.5 provides in pertinent part that a county may "(A) Establish a standard of general assistance for applicants and recipients who share housing with one or more unrelated persons or with one or more persons who are not legally responsible for the applicant or recipient. The standard of general assistance aid established pursuant to Section 17000.5 for a single adult recipient may be reduced . . . by not more than . . . [¶] (i) Fifteen percent if the recipient shares housing with one other [unrelated or non-legally responsible] person . . . [¶] (ii) Twenty percent if the recipient shares housing with two other [such] persons . . . [¶] (iii) Twenty-five percent if the recipient shares housing with three or more other [such] persons . . . ." (See *Oberlander* v. *County of Contra*

---

[3]The guidelines give the following example of a family: "For instance, if an older married couple, their daughter and her husband and two children, and the older couple's nephew all lived in the same house or apartment, they would all be considered members of a single family." (Guidelines, *supra*, 56 Fed.Reg. 6860.)

*Costa, supra,* 11 Cal.App.4th at pp. 542-543.) Importantly, the federal poverty guidelines do not distinguish between "legally responsible" relatives and "nonlegally responsible" relatives. This concept was introduced by the state Legislature.

It was against this legislative backdrop that Contra Costa County (hereafter Contra Costa) adopted the resolution which is the subject of this appeal. That resolution (Resolution No. 92/671) provides in pertinent part:

"102. The general assistance standards of aid for applicants or recipients living alone or with responsible family members are established by family budget units consisting of the General Assistance applicant or recipient and all persons related by birth, marriage or adoption with whom the applicant or recipient lives, provided that one or more of such persons is legally responsible for the applicant or recipient.

"(a) It is rebuttably presumed as to family budget units that parents are legally responsible for the support of their indigent adult children who live with them, and adult children are legally responsible for the support of their indigent parents who live with them. (Civil Code § 206)

"(b) The standard of general assistance aid for each person in a budget unit exceeding 1 shall be an amount equal to the multiple person assistance unit standard divided by the number of persons in the assistance unit.

"(c) The monthly standards of general assistance aid per assistance unit are:

| "Size of Assistance Unit | Standard of Aid |
|---|---|
| "1 . . . | $307 |
| "2 | $413 |
| "3 | $517 |
| "4 | $624 |

" .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"102.6 [T]he General assistance standard of aid for applicants or recipients who share housing with one or more unrelated persons or with one or more persons including persons related by birth, marriage or adoption who are not legally responsible for the applicant or recipient (non-family

budget unit) pursuant to Welfare and Institutions Code § 17001.5(a)(2)(A) are:[4]

"Housing shared with one other person                    $261
"Housing shared with two other persons                   $246
"Housing shared with three or more other persons         $230"

The net effect of Resolution No. 92/671 was to create two different payment schedules: one applicable to recipients who live in shared housing with "legally responsible" relatives, and another applicable to recipients who live in shared housing with persons who are *not* "legally responsible" relatives. The benefits provided to those who live with "legally responsible" relatives are *less* than those provided to recipients who live in other shared housing. In addition, Resolution No. 92/671 defined "legally responsible" relatives as presumptively including the parents of indigent adult children, and the adult children of indigent parents.

The facts regarding the named plaintiff, Anthony Freitas, provide a good example of how the resolution works. Freitas is 41 years old and lives in Concord with his 75-year-old father, who is retired and living on a pension. Because Freitas is unemployed, he has been receiving general assistance from the county. Prior to November 1, 1992, he received $291 per month. However, when Resolution No. 92/671 became effective on November 1, 1992, his general assistance payments were reduced to $207 per month. This was because his father was considered a legally responsible relative under Resolution No. 92/671, section 102, subdivision (a). Consequently, the father was included in a "family budget unit" with Freitas. Because the "family budget unit" consisted of two persons, Contra Costa divided the amount of general assistance payable to a two person family budget unit ($413) by the number of persons in the unit (2) and gave Freitas his pro rata share of $207 (rounded off). If Freitas's father had been considered a *non*legally responsible relative, Freitas would have been entitled to payments of $261 per month, the amount authorized in Resolution No. 92/671, section 102.6 for a recipient sharing housing with one other person who is not a "legally responsible" relative.

PROCEDURAL HISTORY

Freitas filed his complaint for declaratory and injunctive relief in February of 1993. The case was certified as a class action applicable to all current and

---

[4]This standard was originally intended to be temporary pending resolution of a lawsuit challenging an alternative reduced standard of aid for recipients living with unrelated individuals or nonlegally responsible relatives. However, the Court of Appeal disapproved the alternative standard, and the standard quoted above is currently in effect. (*Oberlander* v. *County of Contra Costa, supra,* 11 Cal.App.4th at pp. 543-545.)

future general assistance recipients whose aid was determined under section 102 of Resolution No. 92/671. Thereafter, the trial court denied Freitas's motion for summary judgment and found that the definition of a legally responsible relative found in Resolution No. 92/671 is consistent with sections 17000.5 and 17001.5. To expedite appellate review, the parties stipulated to the entry of judgment against Freitas and the class he represents. A timely notice of appeal was filed on July 12, 1993.

## DISCUSSION

Before focusing on the issue in this appeal, it is useful to note what is *not* at issue in this case. First, appellants do not challenge the general structure of the state statutory scheme or the Contra Costa resolution. That is, appellants concede that section 17000.5 permits one standard of aid for general assistance recipients who share housing with legally responsible relatives, while section 17001.5 permits a second (higher) standard of aid for recipients who share housing with persons *other* than legally responsible relatives. Moreover, appellants do not contend that the disparity in aid violates their right to equal protection under the law. ■ Instead, this appeal focuses on one question only: namely, *who* may be included within the definition of a legally responsible relative? Appellants contend that legally responsible relatives are statutorily limited to (1) spouses and (2) the parents of *minor* recipients. (§ 17300.) Contra Costa maintains that it may define "legally responsible" relatives to include (1) the parents of *adult* indigent children and (2) adult children who share housing with their indigent parents. (Civ. Code, former § 206; Fam. Code, §§ 3910, 4400.)

Before we turn to the state statutes which define the scope of legally responsible relatives, we first deal with Contra Costa's threshold argument that we must look to federal rather than state law to determine who falls within the ambit of the reduced aid provisions contained in section 17000.5. It is true, as Contra Costa points out, that when the Legislature first adopted the safe harbor provision based on the federal poverty line (§ 17000.5, subd. (a)) it apparently intended to apply the definition of "family unit" found in the federal poverty guidelines. (See *Oberlander* v. *County of Contra Costa*, *supra*, 11 Cal.App.4th at p. 544, fn. 6.) As indicated, a "family unit" is a single unrelated individual (whether he lives alone or with others) or a group of *any* related individuals living together.[5] Thus, under this definition, Freitas's father is clearly a member of Freitas's "family unit." Consequently, Contra Costa contends that the aid level must be set pursuant to section 17000.5.

---

[5]In classic bureaucratese, the guidelines explain that "either an unrelated individual or a family . . . constitutes a family unit. In other words, a family unit of size one is an unrelated

However, this is not the end of the story. When Contra Costa adopted its initial aid standards pursuant to section 17000.5 it provided for reduced benefits to *unrelated* adults sharing housing. The Court of Appeal concluded that this was improper, because the federal poverty guidelines do not treat unrelated individuals who live together as a single "family unit"; rather, each unrelated individual is a "family unit" unto himself, even if sharing housing with others. (*Oberlander* v. *County of Contra Costa, supra*, 11 Cal.App.4th at pp. 543-544, fn. 6.)

In apparent response to this Court of Appeal decision, the Legislature passed section 17001.5 as urgency legislation. (Stats. 1992, ch. 719, §§ 14, 17; see *Oberlander* v. *County of Contra Costa, supra*, 11 Cal.App.4th at p. 538.) As indicated, that section states that a county "may" "[e]stablish [a specified reduced] standard of general assistance for applicants and recipients who share housing with one or more unrelated persons *or with one or more persons who are not legally responsible for the applicant or recipient.*" (§ 17001.5, subd. (a)(2)(A), italics added.)

Interestingly, although it could have done so, the Legislature did not limit the scope of section 17001.5 to recipients who live with unrelated persons, but also included those who live with other "persons" (i.e., *relatives*) "who are not legally responsible for the . . . recipient." Of course, in construing a statute we should avoid an interpretation which renders some terms mere surplusage; "every word [of the statute] should be given some significance, leaving no part useless or devoid of meaning." (*City and County of San Francisco* v. *Farrell* (1982) 32 Cal.3d 47, 54 [184 Cal.Rptr. 713, 648 P.2d 935].) Thus, the question in this case is what did the Legislature intend when it made the reduced benefits provision of section 17001.5 applicable not only to recipients who live with "unrelated" persons, but also to those who live with relatives "who are not legally responsible for the . . . recipient."

Initially, it appears that although a county is not compelled to adopt a reduced aid standard pursuant to section 17001.5, subdivision (a)(2)(A), once it does so it must apply that standard to *both* classes covered by that subdivision; namely, recipients who live with unrelated persons, and those who live with relatives who are not legally responsible for the recipient.[6] Indeed, Resolution No. 92/671 adopts this interpretation of the relevant statutes. The resolution applies a single standard of aid to applicants who

individual, while a family unit of two/three/etc. is the same as a family of two/three/etc." (Guidelines, *supra*, 56 Fed.Reg. 6860.)

[6]The relevant subdivision states that the county may "[e]stablish *a* standard of general assistance for . . . recipients who share housing with [1] one or more unrelated persons *or* [2] with one or more persons who are not legally responsible for the . . . recipient." (§ 17001.5, subd. (a)(2)(A), italics added.) Thus, the subdivision contemplates a single standard of aid which will apply to both classes of recipients.

share housing with unrelated persons *and* to those who share housing with "one or more persons including persons related by birth, marriage or adoption who are not legally responsible for the applicant or recipient . . . ." (Resolution No. 92/671, § 102.6.)

However, appellants argue that although the resolution is consistent with the general statutory scheme, it applies a definition of responsible relatives which is broader than that contemplated by the Legislature. Unfortunately, the Legislature did not define "persons who are not legally responsible for the applicant or recipient" when it inserted that term in section 17001.5. Consequently, appellants cite section 17300, which provides in pertinent part: "All aid rendered by the county under this part shall be a charge against the *responsible relative or relatives* of the recipient thereof, and the county rendering aid shall be entitled to reimbursement therefor. [¶] . . . [¶] *For the purposes of this chapter responsible relative or relatives mean the spouse of a recipient and parent of a minor child who is a recipient.*" (Italics added.) Although it is not in the same chapter, section 17001.5 is part of the same law where this definition of "responsible relative" appears. (County Aid and Relief to Indigents [div. 9, pt. 5, §§ 17000-17500].) "It is a settled principle of statutory construction that when a word or phrase has been given a particular meaning in one part of a law, it is to be given the same meaning in other parts of the law." (*City of Sacramento* v. *State of California* (1984) 156 Cal.App.3d 182, 197 [203 Cal.Rptr. 258].)

Nevertheless, Contra Costa cites a provision in the *Civil Code* to support its argument that adult children and their parents may properly be considered "legally responsible" relatives under section 17001.5. Effective January 1, 1994, that provision—Civil Code former section 206—was repealed and its substance reenacted as part of the new Family Code.[7] (Stats. 1992, ch. 162, §§ 2, 10.) Family Code section 3910 now provides: "(a) The father and mother have an equal responsibility to maintain, to the extent of their ability, a child of whatever age who is incapacitated from earning a living and without sufficient means." Family Code section 4400 provides: "Except as otherwise provided by law, an adult child shall, to the extent of his or her ability, support a parent who is in need and unable to maintain himself or herself by work."

There are several problems with relying on Family Code sections 3910 and 4400 to determine the scope of legally responsible relatives for the

---

[7]Civil Code former section 206 provided: "It is the duty of the father, the mother, and the children of any person in need who is unable to maintain himself by work, to maintain such person to the extent of their ability. The promise of an adult child to pay for necessaries previously furnished to such parent is binding. A person who is receiving aid to the aged shall be deemed to be a person in need who is unable to maintain himself by work."

purpose of section 17001.5. First, the Family Code sections are not part of the same law where section 17001.5 appears, and are in fact found in a completely different code. Thus, the presumption that when a word or phrase has been given a particular meaning in one part of a law, it is to be given the same meaning in other parts of the law (*City of Sacramento* v. *State of California, supra*, 156 Cal.App.3d at p. 197) does not apply to Family Code sections 3910 and 4400 vis-à-vis section 17001.5.[8]

Second, Family Code section 3910, which is most relevant to the situation of the named plaintiff, does *not* state that parents are responsible for all adult children who live with them. Instead, it provides that a parent has a duty to support a child "of whatever age who is *incapacitated* from earning a living and without sufficient means." (Italics added.) Similarly, the prior statute—Civil Code former section 206—created a duty to support an adult child who was "unable to maintain himself by work." In interpreting Civil Code former section 206, the courts generally held that the duty to support an adult child did not arise unless the child was unable to work because of mental or physical handicap. (See *Rebensdorf* v. *Rebensdorf* (1985) 169 Cal.App.3d 138, 146 [215 Cal.Rptr. 76] (dis. opn. of Franson, J.), and cases there cited.) If anything, this qualification is even clearer under current law which requires that the adult child be "incapacitated" from earning a living before the duty to support arises. (Fam. Code, § 3910, subd. (a).) Consequently, even if we were to look to Family Code section 3910 to define legally responsible relatives, the definition in Resolution No. 92/671 may still be overbroad. That resolution provides that "It is rebuttably presumed as to family budget units that parents are legally responsible for the support of their indigent adult children who live with them, and adult children are legally responsible for the support of their indigent parents who live with them." (Resolution No. 92/671, § 102, subd. (a).) Thus, the burden is placed on the parent to prove that the child is *not* "incapacitated." Consequently, in many cases a hearing or administrative determination will be necessary to determine whether the adult child is incapacitated. Similar problems would also arise with respect to indigent parents living with their adult children,

---

[8]The separation between Civil Code former section 206 and the general assistance statutes was highlighted in *County of San Bernardino* v. *Simmons* (1956) 46 Cal.2d 394, 398 [296 P.2d 329]: "There is nothing in section 206 which suggests an intention to create a liability of the child of poor parents to public agencies which support the parents in accord with their law-imposed duty to pay aid to such parents; . . . It seems apparent, therefore, that the Legislature intended, by the Welfare and Institutions Code, to cover completely the subject of recovery by public agencies from responsible relatives, and that it did not intend to create, and that there is no proper basis for the courts to innovate, a right of recoupment derived from section 206 of the Civil Code." (See also, *Rehabilitation Inst. of Chicago* v. *Einhorn* (1983) 141 Cal.App.3d 1036, 1039 [190 Cal.Rptr. 702].)

since a child's duty to support a parent arises only if the parent "is in need and unable to maintain himself or herself by work." (Fam. Code, § 4400.)

In sum, Contra Costa has not overcome the presumption that a word or phrase given a particular meaning in one part of a law, should be given the same meaning in other parts of the law. (*City of Sacramento* v. *State of California, supra,* 156 Cal.App.3d at p. 197.) If anything, the difficulties in applying Family Code sections 3910 and 4400 on a case-by-case basis convince us that the Legislature intended to rely on the definition of "responsible relative" found in section 17300. That definition is clear and unambiguous and does not require a factual determination in each case. It simply provides that a spouse is responsible for his husband or wife, and a parent is responsible for a *minor* child. We believe it is far more likely that the Legislature intended to rely on this clear-cut definition—which is contained in the very law the Legislature was amending—rather than an amorphous standard in a different code.

## DISPOSITION

The judgment is reversed and the case is remanded to the superior court for proceedings consistent with the views expressed in this opinion.[9]

Costs to appellants.

Merrill, J., and Chin, J., concurred.

A petition for a rehearing was denied October 7, 1994, and respondents' petition for review by the Supreme Court was denied December 1, 1994.

---

[9]We decline appellants' invitation to grant injunctive relief on our own. As appellants themselves point out, it may be necessary to make "corrective" payments to those whose benefits were lowered because of Contra Costa's erroneous interpretation of section 17001.5. We believe the trial court is in the best position to determine the amount and manner in which those payments should be made, and the manner in which the current resolution should be abated.