[No. A072096. First Dist., Div. Four. Aug. 30, 1996.]

ROBERT TAYLOR et al., Plaintiffs and Respondents, v.
COUNTY OF CONTRA COSTA et al., Defendants and Appellants.

**COUNSEL**

Victor J. Westman, County Counsel, and Arthur W. Walenta, Assistant County Counsel, for Defendants and Appellants.

Control Costs Legal Services Foundation, Ralph Murphy, Philip J. Bertenthal, Western Center on Law and Poverty and Richard A. Rothschild for Plaintiffs and Respondents.

**OPINION**

**HANLON, J.**—Judgment was entered against Contra Costa County, its board of supervisors and the director of its social service department (the County) which prevented the County from reducing general assistance benefits to recipients living with family members who are not responsible for their support. We hold that Welfare and Institutions Code section 17000.5 authorizes reduced benefits if the recipient shares housing with relatives by

birth, marriage or adoption, even if none of those relatives is responsible for the recipient's support. We therefore reverse.

## I. BACKGROUND

### A. *The Statutory Scheme*

County general assistance mandated by Welfare and Institutions Code section 17000 et seq.[1] " 'is a program of last resort for indigent and disabled persons unable to qualify for other kinds of public benefits.' " (*Whitfield* v. *Board of Supervisors* (1991) 227 Cal.App.3d 451, 456 [277 Cal.Rptr. 815].) Section 17001 requires counties to "adopt standards of aid and care for the indigent and dependent poor." In 1991, the Legislature enacted section 17000.5, which "overrule[d] previous judicial authority which required the standard of aid to be based upon a specific factual study of actual subsistence costs of living in each county." (*Gardner* v. *County of Los Angeles* (1995) 34 Cal.App.4th 200, 205-206 [40 Cal.Rptr.2d 271], citing inter alia *Boehm* v. *Superior Court* (1986) 178 Cal.App.3d 494, 501-502 [223 Cal.Rptr. 716].) As this division noted in *Oberlander* v. *County of Contra Costa* (1992) 11 Cal.App.4th 535, 544 [15 Cal.Rptr.2d 182], section 17000.5 is a "safe harbor" for counties for purposes of their duty to provide general assistance. Compliance with section 17000.5 fulfills this duty even if the amount paid does not meet basic needs. (*Bell* v. *Board of Supervisors* (1994) 23 Cal.App.4th 1695, 1705 [28 Cal.Rptr.2d 919].)

Section 17000.5 provides in pertinent part: "(a) The board of supervisors in any county may adopt a general assistance standard of aid, including the value of in-kind aid, that is 62 percent of a guideline that is equal to the 1991 federal official poverty line and may annually adjust that guideline in an amount equal to any adjustment provided under Chapter 2 (commencing with Section 11200) of Part 3 for establishing a maximum aid level in the county. [¶] (b) The adoption of a standard of aid pursuant to this section shall constitute a sufficient standard of aid. [¶] (c) For purposes of this section, 'federal official poverty line' means the same as it is defined in subsection (2) of Section 9902 of Title 42 of the United States Code. . . ." 42 United States Code section 9902(2) states that: "The term 'poverty line' means the official poverty line defined by the Office of Management and Budget based on Bureau of Census data. The Secretary [of Health and Human Services] shall revise the poverty line annually . . . ."

In *Oberlander* v. *County of Contra Costa, supra,* 11 Cal.App.4th at page 539, we observed that "[t]he official poverty guideline for 1991 was set at

---

[1] Unless otherwise indicated, all further statutory references are to the Welfare and Institutions Code.

varying dollar amounts based upon the size of the family unit." (See U.S. Dept. of Health and Human Services [HHS], Annual Update of the HHS Poverty Income Guidelines, 56 Fed.Reg. 6859 (Feb. 20, 1991) [hereafter Guidelines].) For a family unit of one living outside of Alaska or Hawaii the figure was set at $6,620, for a family unit of two $8,880, for a family unit of three $11,140 and so forth. (Guidelines, *supra*, at p. 6860.) The federal poverty guidelines define a "family unit" as "either an unrelated individual or a family." (*Ibid.*) "An unrelated individual is a person 15 years old or over [other than an inmate of an institution] who is not living with any relatives." (*Ibid.*) A "family" is "a group of two or more persons related by birth, marriage, or adoption who live together; all such related persons are considered as members of one family." (*Ibid.*) "In other words, a family unit of size one is an unrelated individual, while a family unit of two/three/etc. is the same as a family of two/three/etc." (*Ibid.*)

Section 17000.5 does not authorize any reduction of benefits for unrelated persons by virtue of the fact that they share housing, because an unrelated individual is his or her own "family unit of one" under the Guidelines. (See *Oberlander* v. *County of Contra Costa, supra,* 11 Cal.App.4th at p. 544, fn. 6.) The Guidelines' definition of a "family" does not distinguish between relatives who are legally responsible for each other and those who are not. This distinction was introduced into the statutory scheme when the Legislature enacted section 17001.5 in 1992. (Stats. 1992, ch. 719, § 14; see *Freitas* v. *County of Contra Costa* (1994) 28 Cal.App.4th 163, 167 [33 Cal.Rptr.2d 406].)

Former subdivision (a)(2) of section 17001.5 provided: "(a) Notwithstanding any other provision of law, including, but not limited to, Section 17000.5, the board of supervisors of each county, or the agency authorized by the county charter, may do any of the following: [¶] . . . [¶] (2)(A) Establish a standard of general assistance for applicants and recipients who share housing with one or more unrelated persons or with one or more persons who are not legally responsible for the applicant or recipient. The standard of general assistance aid established pursuant to Section 17000.5 for a single adult recipient may be reduced pursuant to this paragraph by not more than the following percentages, as appropriate: [¶] (i) Fifteen percent if the recipient shares housing with one other person described in this subparagraph. [¶] (ii) Twenty percent if the recipient shares housing with two other persons described in this subparagraph. [¶] (iii) Twenty-five percent if the recipient shares housing with three or more other persons described in this subparagraph. [¶] (B) Any standard of aid adopted pursuant to this paragraph shall constitute a sufficient standard of aid for any recipient who shares housing. [¶] (C) Counties with shared housing reductions larger than the amounts specified in subparagraph (A) as of August 19, 1992, may continue to apply those adjustments." (Stats. 1992, ch. 719, § 14.)

This language was deleted from section 17001.5 effective January 1, 1995. (Stats. 1994, ch. 952 § 1.)[2] While former subdivision (a)(2) of section 17001.5 was in effect, "section 17000.5 permit[ted] one standard of aid for general assistance recipients who share[d] housing with legally responsible relatives, while section 17001.5 permit[ted] a second (higher) standard of aid for recipients who share[d] housing with persons *other* than legally responsible relatives." (*Freitas* v. *County of Contra Costa, supra,* 28 Cal.App.4th at p. 169.) This disparity resulted because shared housing reductions pegged to the federal poverty line under section 17000.5 were higher than the shared housing reductions under former subdivision (a)(2)(A) of section 17001.5.

At the time of the *Freitas* case, for example, the adjusted poverty line for an individual living alone was $307 a month, and for a family of two was $413 a month. A recipient living with one responsible relative was subject to a poverty line shared housing reduction under section 17000.5, and thus received $207 per month (413 divided by 2 and rounded off). A recipient living with one unrelated person or "nonresponsible" relative was subject to a 15 percent shared housing reduction under former section 17001.5, subdivision (a)(2)(A)(i), and thus received $261 (85 percent of 413, rounded off). (See *Freitas* v. *County of Contra Costa, supra,* 28 Cal.App.4th at pp. 167-168.)

B.  *The County Resolution*

While former subdivision (a)(2) of section 17001.5 was in effect, the County paid benefits according to two schedules of shared housing reductions which reflected the difference between that subdivision and section 17000.5. During this period, "[t]he benefits provided to those who live[d] with 'legally responsible' relatives [were] *less* than those provided to recipients who live[d] in other shared housing." (*Freitas* v. *County of Contra Costa, supra,* 28 Cal.App.4th at p. 168.) Lower benefits were paid to those living with responsible family members pursuant to a schedule of reductions under section 17000.5 based on the federal poverty line. (28 Cal.App.4th at p. 167.)[3] Higher benefits were paid to those living with unrelated persons or nonresponsible relatives in accordance with the percentage reductions then

---

[2]We note that the Legislature has recently decided to restore this language to section section 17001.5, effective January 1, 1997. (Stats. 1996, ch. 6, § 9.)

[3]This category of aid before the repeal of section 17001.5, subdivision (a)(2) was as follows: "The general assistance standards of aid for applicants or recipients living alone or with responsible family members are established by family budget units consisting of the General Assistance applicant or recipient and all persons related by birth, marriage or

set forth in subdivision (a)(2)(A) of section 17001.5. (*Freitas* v. *County of Contra Costa, supra,* at pp. 167-168.)[4]

In 1995, after the repeal of subdivision (a)(2) of section 17001.5, the County adopted Resolution No. 95/384 which established a single schedule of reductions, pegged to the federal poverty line under section 17000.5, for all those living with specified members of their "family" as defined in the federal Guidelines, regardless of whether those relatives were "legally responsible" for the recipient. Resolution No. 95/384 amended sections 102 and 102(a) of the County "Standards of Assistance" to read as follows:

"102. The general assistance standards of aid for applicants or recipients living alone or with specified relatives are established by budget units consisting of the following persons: [¶] (1) The General Assistance applicant or recipient; and [¶] (2) The following persons living with and related to the applicant or recipient by birth, marriage, or adoption: mother, father, brother, sister, daughter, son, grandmother, grandfather, aunt uncle, niece, and nephew. [¶] (a) The standard of General Assistance aid for each person in a budget unit exceeding one shall be an amount equal to the multiple person budget unit standard divided by the number of persons in the budget unit. Any budget unit with five or more persons shall be considered as having four persons in the budget unit."

adoption with whom the applicant or recipient lives, provided that one or more of such persons is legally responsible for the applicant or recipient. . . . [¶] The standard of general assistance aid for each person in a budget unit exceeding 1 shall be an amount equal to the multiple person assistance unit standard divided by the number of persons in the assistance unit." The standards of aid per assistance unit were modified slightly after the *Frietas* decision to be as follows:

| "Size of Assistance Unit | Standard of Aid |
| --- | --- |
| 1 (living in independent housing) | $ 300 |
| 2 | $ 403 |
| 3 | $ 504 |
| 4 | $ 608 |
| 5 | $ 708 |
| 6 | $ 812 |
| 7 | $ 915 |
| 8 | $1016" |

[4]This category of aid before the repeal of section 17001.5, subdivision (a)(2) was as follows: "the General assistance standard of aid for applicants or recipients who share housing with one or more unrelated persons or with one or more persons including persons related by birth, marriage or adoption who are not legally responsible for the applicant or recipient (non-family budget unit) pursuant to Welfare and Institutions Code § 17001.5(a)(2)(A) are:
"Housing shared with one other person $261
"Housing shared with two other persons $246
"Housing shared with three or more other persons $230"

The County subsequently amended section 102(b) of its Standards of Assistance to provide as follows: "102 [¶] . . . [¶] (b) The monthly standards of general assistance aid per budget unit are:

| "Size of Budget Unit | Standard of Aid |
|---|---|
| 1 | $300 |
| 2 | $403 |
| 3 | $504 |
| 4 | $608" |

This new schedule eliminates shared housing reductions for those living with unrelated persons, and thus increases the benefits paid to those individuals. However, the new schedule decreases the benefits paid to persons living with nonresponsible relatives, because it replaces the shared housing reductions previously applied to such individuals under former section 17001.5, subdivision (a)(2) with relatively greater reductions tied to federal poverty levels under section 17000.5.

## C. *This Litigation*

Respondents Robert Taylor et al., are recipients of general assistance from the County who filed this class action suit in September of 1995 to enjoin implementation of Resolution No. 95/384 on the ground that it unlawfully lowers benefits below the level set in section 17000.5 as to those recipients who share housing with nonresponsible relatives. Taylor's situation is presented as representative of others in the class. Taylor is unemployed and has no assets or income other than general assistance and food stamps. He is 39 years old and rents a room in his mother's house. He and his mother share the house with his brother's two children and their mother. Taylor and his mother have declared that if Taylor's general assistance benefits are reduced as provided in Resolution No. 95/384, then he will no longer be able to pay his mother enough rent for her to meet her mortgage payments on the house. As a consequence she will be forced to evict him and he will probably become homeless.

The court issued a preliminary injunction effective October 10, 1995, preventing implementation of Resolution No. 95/384. The County's motion for judgment on the pleadings was denied, whereupon the County stipulated to entry of judgment for respondents without prejudice to the County's right

to appeal from the judgment. The judgment permanently enjoined the County from enforcing Resolution No. 95/384, and declared that the resolution is "contrary to law in that it is not authorized by Welfare and Institutions Code section 17000.5 and was established without a needs study required by Welfare and Institutions Code section 17000."

## II. DISCUSSION

■ The issue is whether section 17000.5 authorizes reduced benefits if the recipient lives with family members who are not legally responsible for the recipient's support. If shared housing reductions for nonresponsible relatives are within section 17000.5's "safe harbor," then they can be implemented without a study of subsistence needs. (*Oberlander* v. *County of Contra Costa, supra,* 11 Cal.App.4th at p. 542.)

The laws governing general assistance are to be "fairly and equitably construed to effect the stated objects and purposes of the program" (§ 11000), and it has been held that benefits cannot be substantially reduced unless there is "clear legislative authority in the statute upon which the County purports to rely" (*Gardner* v. *County of Los Angeles, supra,* 34 Cal.App.4th at p. 227). Section 17000.5 clearly authorizes the reductions at issue here.

The federal official poverty line cited in section 17000.5 varies with the size of the family unit. In an apparent recognition of the economies of scale which may result when families live together, the per person income constituting the poverty line declines under the federal guidelines as the size of the family increases. In 1991, the poverty line income per person was set at $6,620 for a family of one, $4,440 for a family of two ($8,880 divided by 2), $3,713 for a family of three ($11,140 divided by 3) and so on.[5] Thus, when the Legislature incorporated the federal poverty line into section 17000.5, it plainly meant to provide for some reduction in benefits to recipients who

---

[5]The complete federal Guidelines were as follows:

| "Size of Family Unit | Poverty Guideline |
|---|---|
| 1 | $ 6,620 |
| 2 | 8,880 |
| 3 | 11,140 |
| 4 | 13,400 |
| 5 | 15,660 |
| 6 | 17,920 |
| 7 | 20,180 |
| 8 | 22,440 |

"For family units with more than 8 members, add $2,260 for each additional member." (Guidelines, *supra,* 56 Fed. Reg. at p. 6860.)

live with their families. Indeed, respondents do not contend otherwise. The only reductions in question are those based on residence with nonresponsible relatives, and there is no claim that benefits cannot be reduced under the statute if the recipient lives with responsible relatives.

However, as Division Three of this district emphasized in *Freitas*, "the federal poverty guidelines do not distinguish between 'legally responsible' relatives and 'nonlegally responsible' relatives." (*Freitas* v. *County of Contra Costa, supra,* 28 Cal.App.4th at p. 167.) When the Legislature "adopted the safe harbor provision based on the federal poverty line (§ 17000.5, subd. (a)) it apparently intended to apply the definition of 'family unit' found in the federal poverty guidelines." (*Id.* at p. 169.) The federal definition of a "family unit" is simply "a group of two or more persons related by birth, marriage, or adoption who live together." (Guidelines, *supra,* 56 Fed. Reg. at p. 6860.) This definition clearly includes nonresponsible relatives.

The discussion in *Freitas* leaves no doubt on this point. *Freitas* held that adult children and parents of adult children were not "legally responsible" relatives within the meaning of former subdivision (a)(2) of section 17001.5. (*Freitas* v. *County of Contra Costa, supra,* 28 Cal.App.4th at p. 165.) Mr. Freitas was 41 years old and lived with his 75-year-old father. Thus, the father was "not legally responsible" for Freitas for purposes of section 17001.5. However, the court pointed out that "under [the federal] definition, Freitas's father is clearly a member of Freitas's 'family unit.'" (*Id.* at p. 169.)

Since the federal poverty guidelines do not distinguish between relatives who are responsible for each other and those who are not, the concept of legal responsibility has no bearing on the reduction of benefits under section 17000.5. In the case of Mr. Taylor, the County apparently seeks to include his mother and his brother's two children in his "budget unit." His situation falls squarely within the example of a "family unit" set forth in the federal guidelines: "For instance, if an older married couple, their daughter and her husband and two children, and the older couple's nephew all lived in the same house or apartment, they would all be considered members of a single family." (Guidelines, *supra,* 56 Fed. Reg. at p. 6860.) This example illustrates the inclusive nature of the federal "family unit." The federal definition may, as the *Freitas* court reasoned, be broad enough to encompass "*any* related individuals living together." (*Freitas* v. *County of Contra Costa, supra,* 28 Cal.App.4th at p. 169.)

All of the relatives Resolution No. 95/384 includes in a "budget unit"— mother, father, sister, brother, daughter, son, grandmother, grandfather, aunt,

uncle, niece and nephew living with the recipient and related to the recipient by birth, marriage or adoption—are members of a "family unit" under the federal poverty Guidelines, even if they are not legally responsible for the recipient's support. Since the County's budget unit definition coincides with the family unit definition employed by the federal poverty Guidelines, we conclude that the benefit reductions provided in Resolution No. 95/384 based on shared housing with nonresponsible relatives are authorized under section 17000.5, and may be imposed without a needs study under section 17000.

Respondents seek to avoid this conclusion with an argument based on the legislative history of former subdivision (a)(2) of section 17001.5. In respondents' view, the legislative history shows that the Legislature wanted to lighten the fiscal burden of general assistance on counties when it enacted subdivision (a)(2) of section 17001.5, and it wanted to eliminate reductions in benefits which might add to the ranks of the homeless when it repealed that subdivision. The County questions the relevance and admissibility of the legislative materials upon which respondents rely, but we will assume for purposes of this opinion that former subdivision (a)(2) of section 17001.5 was intended, as respondents urge, to allow counties to decrease their general assistance payments.

Respondents note that, under our reading of section 17000.5, this statute provides for lesser benefits to those who share housing with nonresponsible relatives than were provided under former subdivision (a)(2) of section 17001.5. In other words, enactment of subdivision (a)(2) served to increase the benefits payable to that category of recipients. Respondents contend that this cannot be the correct result because subdivision (a)(2) was intended to decrease, not increase, benefits. Respondents ask why the Legislature would have needed to enact the shared housing reductions of subdivision (a)(2) in order to decrease benefits if, as we have concluded, section 17000.5 already provided for even greater reductions for those who shared housing with nonresponsible relatives. Respondents submit that there is no satisfactory answer to this question, and thus that the enactment of subdivision (a)(2) of section 17001.5 established that no benefit reductions based on residence with nonresponsible relatives were authorized under section 17000.5.

The problem with this line of argument is that it focuses entirely on former section 17001.5, subdivision (a)(2)'s reductions based on shared housing with nonresponsible relatives, and ignores that statute's reductions based on shared housing with unrelated persons. As previously noted, no reductions for shared housing with unrelated persons are authorized under section 17000.5, because unrelated individuals are not included in the "family" as defined by the federal poverty Guidelines. Thus, the enactment of

section 17001.5, subdivision (a)(2) permitted shared housing reductions for an entire category of recipients—those in shared housing with unrelated persons—that were not permitted under section 17000.5, and thereby reduced the benefits payable to those recipients. At the same time, under our interpretation of section 17000.5, former section 17001.5, subdivision (a)(2) decreased the shared housing reductions for another category of recipients—those in shared housing with nonresponsible relatives—and thereby increased the benefits payable to those recipients.

Insofar as it appears from the record, the net result of these two changes brought about by former section 17001.5, subdivision (a)(2)—a decrease in benefits to one class of recipients, and an increase in benefits to another—was an *overall* decrease in benefits, a result consistent with our construction of section 17000.5, and the aim of former section 17001.5, subdivision (a)(2) as characterized by respondents. Respondents submitted figures to the trial court indicating that over one-third of the County's general assistance recipients live with unrelated individuals, and that more recipients live with unrelated individuals than with nonresponsible relatives. These figures suggest that the result we have posited—a decrease in total benefits paid—was the most likely result of the enactment of section 17001.5, subdivision (a)(2).

It is, in any event, sufficient for present purposes that this result is plausible on the face of the two statutes in question. Respondents would have us ignore the plain import of the words the Legislature has used in section 17000.5 because they would produce an anomaly in the light of the legislative history of a subsequently enacted statute which has since been repealed. We are aware of no precedent for such an approach and respondents have furnished none. We think that for such an argument to succeed the alleged absurdity must at least be abundantly clear, and here it is not. It is not apparent that shared housing reductions under section 17000.5 for members of a "family unit" as defined in the federal poverty guidelines are inconsistent with the legislative aims respondents have identified.

## III. Disposition

The judgment is reversed. In the interests of justice, the parties shall bear their own costs on appeal.

Anderson, P. J., and Poché, J., concurred.