[No. C046473. Third Dist. Oct. 26, 2004.]

PETER PATERNO et al., Petitioners, v.
THE SUPERIOR COURT OF YUBA COUNTY, Respondent;
THE STATE OF CALIFORNIA et al., Real Parties in Interest.

COUNSEL

Desmond, Nolan, Livaich & Cunningham, Gary Livaich, David Collins, Richard F. Desmond; Robins, Kaplan, Miller & Ciresi, Scott G. Johnson; Howard, Rice, Nemerovski, Canady, Falk & Rabkin, Jerome B. Falk, Jr., Simon J. Frankel; Kronick, Moskovitz, Tiedemann & Girard, Lloyd Hinkelman; Frederik A. Jacobsen; Law Offices of Stanley J. Bell and Sally G. Bergman for Petitioners.

No appearance for Respondent.

Bill Lockyer, Attorney General, Andrea Hoch, Chief Assistant Attorney General, Darryl Doke and Sterling A. Smith, Deputy Attorneys General, for Real Party in Interest The State of California.

Law Offices of Carl R. Lindmark and Carl R. Lindmark for Real Party in Interest Reclamation District 784.

OPINION

**BUTZ, J.—** ▇ In 1985, the Legislature amended Code of Civil Procedure section 170.6, subdivision (a)(2)[1] (hereafter section 170.6(a)(2)),[2] to permit a party to make a peremptory challenge when the same trial judge is assigned to conduct a "new trial" after a reversal on appeal. (Stats. 1985, ch. 715, § 1, p. 2350; see *Stegs Investments v. Superior Court* (1991) 233 Cal.App.3d 572, 575 [284 Cal.Rptr. 495] (*Stegs*).) The amendment goes on to provide that the right may be exercised regardless of whether the party has previously used a peremptory challenge, as long as the challenge is made within 60 days after notification of the judge's reassignment.

In this writ proceeding, we are called upon to construe the term "new trial" as it appears in section 170.6(a)(2). We will conclude that because the hearing to be conducted by the trial judge after our remand does not require a reexamination of either law or fact, it is not a new trial within the meaning of the statute. We shall therefore deny the writ.

---

[1] In 1985, the relevant portion of the statute was denominated Code of Civil Procedure section 170.6, subdivision (2). Legislation in 2003 made nonsubstantive changes to maintain the code, and included the insertion of "(a)" before subdivisions (1) through (6). (Stats. 2003, ch. 62, § 22.)

Section 170.6 (a)(2) now reads in pertinent part: "A motion under this paragraph may be made following reversal on appeal of a trial court's decision, or following reversal on appeal of a trial court's final judgment, if the trial judge in the prior proceeding is assigned to conduct a new trial on the matter."

[2] Undesignated statutory references are to the Code of Civil Procedure.

## PROCEDURAL BACKGROUND

This litigation is a coordinated proceeding involving 37 separate actions and more than 3,000 plaintiffs who made flood damage claims stemming from the failure of the South Levee of the Yuba River in 1986. The case features two public entity defendants: The State of California (State) and Reclamation District 784 (District). (*Paterno v. State of California* (2003) 113 Cal.App.4th 998, 1002–1003 [6 Cal.Rptr.3d 854] (*Paterno II*).)

To facilitate review and promote judicial economy, the parties stipulated to dividing the plaintiffs between sample plaintiffs and nonsample plaintiffs, with trial of the sample plaintiffs' cases to be held first. The actions were bifurcated, such that all liability issues were to be determined prior to any adjudication of damages.

In 1999, this court affirmed a jury verdict finding that there was no dangerous condition of public property, but reversed an inverse condemnation liability verdict against defendants, and remanded for another trial. (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 75–76 [87 Cal.Rptr.2d 754].) On March 8, 2000, the Chairperson of the Judicial Council assigned the coordinated actions to the Honorable John J. Golden (a retired judge from Lake County). Neither side challenged the assignment.

By stipulation and order, it was agreed that the cases of the sample plaintiffs would be severed and proceed to final judgment. The factual and legal determinations rendered in the sample plaintiffs' cases would control the disposition of the nonsample plaintiffs' cases, except for the issue of damages. The amount of damages sustained by each of the sample plaintiffs was also fixed by stipulation.

After a court trial, Judge Golden gave a defense judgment in favor of both public entities. (*Paterno II, supra*, 113 Cal.App.4th at p. 1003.) The sample plaintiffs appealed to this court. In *Paterno II,* we affirmed the judgment in favor of the District but reversed the judgment in favor of the State. (*Id.* at p. 1034.) Our disposition reads in part as follows: "The judgment in favor of the State is reversed and the cause is remanded *with directions to enter judgment for* [*the sample plaintiffs*] *and conduct such further proceedings as are necessary to determine the damages of nonsample plaintiffs.*" (*Ibid.,* italics added.) The California Supreme Court denied review in *Paterno II* on March 17, 2004.

The next day, the parties were ordered to appear for a case management conference on April 5, 2004. On March 22, 2004, counsel for several nonsample plaintiffs (petitioners) filed a motion and affidavit seeking to disqualify Judge Golden by peremptory challenge pursuant to section 170.6.

Judge Golden struck the peremptory challenge. While acknowledging that petitioners sought to invoke section 170.6(a)(2), which permits a party to make a peremptory challenge to a reassigned judge after reversal on appeal, the judge ruled that section did not apply here, for two reasons.

First, the challenge was not timely under California Rules of Court, rule 1515,[3] which requires any peremptory challenge to a judge assigned to hear a coordination proceeding to be made within 20 days of the assignment. According to Judge Golden, section 170.6(a)(2) cannot trump the 20-day deadline specified in rule 1515 because the Judicial Council, under the authority granted it by the Legislature to make rules applicable to coordination proceedings (§ 404.7), has provided that its coordination rules apply notwithstanding any conflict with other provisions of law applicable to civil actions (rule 1504(a)).

A second reason why the judge felt section 170.6(a)(2) did not apply was because it was limited to situations where the prior judge was assigned to conduct a "new trial." Here, there had been no assignment to conduct a new trial, and "the conduct of a new trial on the matter is not what the coordination trial judge in this case will be doing."

On April 9, 2004, we granted an alternative writ to review the propriety of Judge Golden's order.

## DISCUSSION

### I. The Effect of Rule 1515

Judge Golden's principal reason for striking the peremptory challenge was that the provisions of section 170.6(a)(2) were preempted by and must yield to the rules for coordination proceedings promulgated by the Judicial Council, and more specifically rule 1515. We disagree.

Pursuant to section 404.7, the Legislature has authorized the Judicial Council to provide by rule the procedures for coordination of civil actions. In 1974, pursuant to this authorization, the Judicial Council adopted Rules for Coordination of Civil Actions (rule 1501 et seq.; see *Industrial Indemnity Co. v. Superior Court* (1989) 214 Cal.App.3d 259, 262 [262 Cal.Rptr. 544] (*Industrial Indemnity*).)

---

[3] Undesignated rule references are to the California Rules of Court.

Rule 1504(a) provides: "Except as otherwise provided in these rules, all provisions of law applicable to civil actions generally apply regardless of nomenclature to an action included in a coordination proceeding if they would otherwise apply to such action without reference to this rule. *To the extent that these rules conflict with such provisions, these rules shall prevail* as provided by Section 404.7 of the Code of Civil Procedure." (Italics added.)

Rule 1515 of the coordination rules provides that "[*a*]*ny motion or affidavit of prejudice regarding an assigned judge shall be submitted in writing to the assigned judge within 20 days after service of the order assigning that judge to the coordination proceeding.* All plaintiffs or similar parties in the included or coordinated actions shall constitute a side and all defendants or similar parties in such actions shall constitute a side for purposes of applying Code of Civil Procedure section 170.6." (Italics added.)

Appellate courts have held that where there is a *conflict* between rule 1515's peremptory challenge provisions and other aspects of section 170.6, rule 1515 prevails. Thus, in *Philip Morris Inc. v. Superior Court* (1999) 71 Cal.App.4th 116, 123–125 [83 Cal.Rptr.2d 671], a party's peremptory challenge to a newly assigned coordination judge, which was timely under rule 1515, was permitted even though that party had already exercised one such challenge in related precoordination proceedings. *Farmers Ins. Exchange v. Superior Court* (1992) 10 Cal.App.4th 1509, 1511–1512 [13 Cal.Rptr.2d 449] and *Stone v. Superior Court* (1994) 25 Cal.App.4th 1144, 1146–1147 [31 Cal.Rptr.2d 56] arrive at similar results under slightly different facts.

In *Industrial Indemnity, supra,* 214 Cal.App.3d at pages 262–264, the court held that add-on plaintiffs who came into a coordination proceeding long after the coordination judge was assigned could not exercise a section 170.6 peremptory challenge. The court declared that the effect of rule 1515 is to "exclude add-on parties from the right to peremptorily challenge the coordination trial judge." (214 Cal.App.3d at p. 263.)

As petitioners point out, rule 1515 was promulgated in 1974, but section 170.6(a)(2) did not come along until 1985.[4] Since the latter section was not even on the Legislature's radar screen when the Judicial Council promulgated its rules for coordination challenges, we must decide whether rule 1515 impliedly conflicts with the parties' right to challenge a reassigned judge after reversal on appeal, as provided for in section 170.6(a)(2).

[4] See footnote 1, *ante,* page 551.

Judge Golden reasoned and the State now argues that since rule 1515 makes no allowance for peremptory challenges except within 20 days of the coordination judge's assignment, any provision of law which allows an additional challenge to be made at some later point in the proceeding is inconsistent with the coordination rules and must yield to those rules. According to this logic, because rule 1515 gives the parties to a coordination proceeding one and only one peremptory challenge at the beginning of the case, allowing a second challenge via section 170.6(a)(2) would frustrate a "vital aspect of coordination," which is "trial of multiple actions by a single judge." (*Industrial Indemnity, supra*, 214 Cal.App.3d at p. 264.)

■ Rule 1515 only governs peremptory challenges to a coordination judge upon his or her initial assignment to the case. We agree that once the coordination judge is assigned and all available peremptory challenges are exhausted, the Judicial Council's rules leave no room for additional challenges until the case is tried and judgment rendered.

■ However, where a case proceeds to judgment and that judgment is reversed on appeal and remanded for a *new trial*, the landscape has changed significantly. The appellate disposition has, in effect, sent the players back to the starting gate, with instructions to start over. It is at this point that the Legislature has determined that a trial judge who has been reversed may be removed from the case if one party feels that judge's future impartiality might be compromised. There is no inconsistency between allowing a peremptory challenge after initial assignment of the coordination judge and again after a reversal on appeal, at least where a new trial must be held. Hence, we find no irreconcilable conflict, either in letter or spirit, between rule 1515 and section 170.6(a)(2).

Since rule 1515's provisions for exercising a peremptory challenge upon initial assignment may be harmonized with section 170.6(a)(2)'s postappeal right to peremptory challenge, the latter is simply one of the "provisions of law applicable to civil actions generally," which still retains vitality in coordination proceedings. (Rule 1504(a).)

## II.   Section 170.6(a)(2)

■ In California, parties in both civil and criminal actions may disqualify an assigned judge without a showing of good cause on the basis of an affidavit asserting that the party believes the judge is biased. (§ 170.6; see

*Solberg v. Superior Court* (1977) 19 Cal.3d 182, 197–198 [137 Cal.Rptr. 460, 561 P.2d 1148].) If the motion under section 170.6 is timely and in the proper form, a new judge must be assigned "to try the cause or hear the matter." (§ 170.6, subd. (a)(3); *Peracchi v. Superior Court* (2003) 30 Cal.4th 1245, 1253 [135 Cal.Rptr.2d 639, 70 P.3d 1054] (*Peracchi*).) As the statute was originally written, the challenge could only be exercised once in any action or special proceeding. (See *Peracchi,* at p. 1253.)

With its 1985 amendment to the statute, the Legislature permitted a peremptory challenge to a trial judge following a reversal on appeal *"if the trial judge in the prior proceeding is assigned to conduct a new trial on the matter."* (§ 170.6(a)(2), italics added.)[5] The 1985 amendment was enacted at a time when it was common to reassign the trial judge to the remanded case, in order "to address the 'concern . . . that a judge who had been reversed might prove to be biased against the party who successfully appealed the judge's erroneous ruling at the original trial.' [Citation.] Accordingly, . . . a party may disqualify the former judge reassigned to the case if the case involves an actual retrial of one or more issues." (*Stubblefield Construction Co. v. Superior Court* (2000) 81 Cal.App.4th 762, 765 [97 Cal.Rptr.2d 121] (*Stubblefield*), quoting *Stegs, supra,* 233 Cal.App.3d at pp. 575–576.)

### A. *Civil Cases Interpreting Section 170.6(a)(2)*

Although section 170.6(a)(2) does not define the term "new trial," intermediate appellate courts have interpreted it broadly. (Wegner et al., Cal. Practice Guide: Civil Trials and Evidence (The Rutter Group 2003) ¶ 3:253, p. 3-65.) Thus, in *Stegs,* the trial court in a partnership dissolution action found a breach of the partnership agreement and gave judgment for one of the partners. The Court of Appeal reversed in part due to erroneous evidentiary rulings and remanded " 'to afford defendants [petitioners] an opportunity to present evidence as to the circumstances under which the parties entered into the written partnership agreement.' " (*Stegs, supra,* 233 Cal.App.3d at p. 574.) When the case was reassigned to the same judge, counsel filed a motion to disqualify him under section 170.6(a)(2), which was disallowed. Deeming that the situation fell within the purpose of the statute, *Stegs* held that the challenge should have been honored, even though the retrial was limited to one issue. (233 Cal.App.3d at p. 576.)

In *Hendershot v. Superior Court* (1993) 20 Cal.App.4th 860 [24 Cal.Rptr.2d 645] (*Hendershot*), the judge in a bench trial gave judgment against a corporation and Hendershot individually. The Court of Appeal affirmed as to the corporation but reversed the judgment against Hendershot.

---

[5] See footnote 1, *ante,* page 551.

Since he had already paid the judgment, Hendershot moved for restitution. When the case was assigned to the same judge, Hendershot filed a peremptory challenge under section 170.6(a)(2). The appellate court considered not only the purpose of the statute but the definition of the term "new trial" in section 656 as " 'a re-examination [*sic*] of an issue of fact in the same court after a trial and decision by a jury, court, or referee.' " (*Hendershot, supra*, at p. 865.) After observing that new trial motions are permitted in a broad variety of cases, *Hendershot* concluded: "We see no reason why it should not receive a similar broad construction in this case, encompassing a posttrial reversal and remand for trial of a contested issue in which trial court discretion or fact determination is involved. Further, both sides have informed us that the contested hearing is expected to involve a claim that Hendershot is an alter ego for the Shadowood Corporation, a circumstance that could affect the merits of the claim for restitution. That was one of the contested issues in the original trial, and it appears that it will be reexamined." (*Ibid.*)

*Stubblefield* features perhaps the most liberal interpretation of section 170.6(a)(2) to date, because in that case there was no contested trial, but instead a summary judgment granted in the defendants' favor. The appellate court reversed in part and remanded for further proceedings. When the case was assigned to the same judge, Stubblefield filed a peremptory challenge. (*Stubblefield, supra*, 81 Cal.App.4th at p. 764.) The Court of Appeal had to confront the fact that its reversal necessitated not a *"new* trial" but a *"first* trial" at best. (*Id.* at p. 765.) The court leapt this hurdle in the following language: "Although there was no full trial of the matter in this case, a final judgment was entered. Our partial reversal requires that the case be reopened, with an actual trial if necessary; furthermore, our partial reversal reflected our view that the trial judge erred in a crucial decision of law. Assuming, as the Legislature did, that a judge may react with a certain pique to the negative treatment of his or her decisions by an appellate court, this situation is obviously one in which the potential for bias exists. Given the policy reasons for the 1985 amendments to Code of Civil Procedure section 170.6, it is plain that Stubblefield had the right to disqualify Judge Warner." (*Id.* at p. 766, fn. omitted.)

The last civil case of note is *Pfeiffer Venice Properties v. Superior Court* (2003) 107 Cal.App.4th 761 [132 Cal.Rptr.2d 400] (*Pfeiffer*), wherein a party who unsuccessfully sought attorney fees in connection with a SLAPP[6] motion obtained a reversal and remand for reconsideration of the fee issue. (*Pfeiffer*, at pp. 763–764.) In allowing a postappeal challenge to the reassigned judge, the same court that decided *Stegs* gave the following elaboration on the

---

[6] Strategic lawsuit against public participation (SLAPP) (§ 425.16).

meaning of "new trial": "As we explained in [*Stegs*], the term 'new trial,' as used in section 170.6, subdivision [(a)](2), 'does not turn on whether the issue(s) to be resolved on remand are limited, but what the court must do to resolve them. If the court's function is merely a ministerial act (such as the recalculation of interest), the 1985 amendment does not apply. If, however, the court must conduct an actual retrial, even if that trial involves only one issue, the court may be disqualified upon a timely affidavit . . . .' " (*Pfeiffer*, at p. 767.) The court noted that since the trial court must make factual findings on the merits of the SLAPP motion to determine the propriety of the fee award, "[i]t will be acting in more than a ministerial manner. Accordingly, it will be conducting a new trial for purposes of a section [170.6(a)(2)] challenge." (*Id.* at p. 768.)

## B. The Meaning of "New Trial" and Its Application Here

Citing the "very broad" construction of the term "new trial" as exemplified in the foregoing cases, petitioners assert that "*any* remand for resolution of *any* contested factual or legal issue is a 'new trial' " within the meaning of section 170.6(a)(2). (Italics added.)

We disagree. While section 170.6(a)(2) may be construed liberally in aid of its legislative purpose, we believe petitioners' proposed construction would unhinge the term "new trial" from its definitional moorings.

Our analysis is informed by the recent decision in *Peracchi, supra*, 30 Cal.4th 1245, wherein the California Supreme Court broke the pattern of appellate decisions advancing ever more generous interpretations of the term "new trial" in section 170.6(a)(2).

In *Peracchi*, the defendant was convicted of two felonies by a jury and given a 25-year-to-life sentence by the trial judge. The appellate court reversed one of the convictions and the prosecutor elected not to retry the reversed count, so that the only task left for the trial judge on remand was to resentence the defendant. (*Peracchi, supra*, 30 Cal.4th at pp. 1249–1250 & 1254, fn. 5.) The Court of Appeal, relying on the broad interpretation of "new trial" in the civil cases we have noted, held that the purpose of the statute could best be served by allowing the defendant to peremptorily challenge the judge under section 170.6(a)(2). (30 Cal.4th at pp. 1250–1251.)

A unanimous Supreme Court reversed. Unlike prior appellate opinions on the subject, the high court placed more emphasis on the meaning of the term "new trial" than on any perceived salutary purpose to be served by the statute. "The Penal Code defines a new trial as 'a reexamination of the issue in the same Court, before another jury, after a verdict has been given.' (Pen. Code, § 1179.) Penal Code section 1180 explains that '[t]he granting of a new trial places the parties in the same position as if no trial had been had.' " (*Peracchi, supra,* 30 Cal.4th at p. 1253.) The court observed that "when resentencing is all that is required, the parties are *not* placed in the same position as if there had been no trial." (*Id.* at p. 1257, italics added.) On the contrary, the trial court's function at resentencing requires that it exercise its discretion in light of *what has already occurred* at trial, following entry of verdict and discharge of the jury. (*Id.* at p. 1254.) Thus, "a remand for resentencing does not necessarily constitute, and is not equivalent to, an order for a new trial." (*Ibid.*) Finding "no indication that, despite the procedural and practical distinctions between a new trial and a resentencing hearing explained above, . . . the Legislature nonetheless intended that a sentencing hearing on remand be considered a new trial for the purpose of the language added to section 170.6, subdivision (2) in 1985" (*id.* at p. 1256), the court concluded that a remand for resentencing did not afford the defendant the right to a new peremptory challenge within the meaning of the statute. (*Id.* at p. 1249.)

■ Following *Peracchi's* paradigm (30 Cal.4th at p. 1253), we first frame the specific question before us: Where all questions of liability have been determined by the appellate court, does a hearing on remand which is limited to the sole issue of damages constitute a "new trial" within the meaning of the statute?

"When interpreting a statute our primary task is to determine the Legislature's intent. [Citation.] In doing so we turn first to the statutory language, since the words the Legislature chose are the best indicators of its intent." (*Freedom Newspapers, Inc. v. Orange County Employees Retirement System* (1993) 6 Cal.4th 821, 826 [25 Cal.Rptr.2d 148, 863 P.2d 218].)

■ Although section 170.6(a)(2) does not contain a definition of the term "new trial," that term is expressly defined in section 656. We presume that the Legislature, in enacting the 1985 amendment, did not choose the term "new trial" by accident (cf. *In re Christian S.* (1994) 7 Cal.4th 768, 776 [30 Cal.Rptr.2d 33, 872 P.2d 574]), but intended to refer to the statutory definition found in the same code it was amending (*Freitas v. County of Contra Costa* (1994) 28 Cal.App.4th 163, 173 [33 Cal.Rptr.2d 406]).

Section 656 says: "A new trial is a re-examination of an issue of fact in the same court after a trial and decision by a jury, court, or referee." The statute on its face appears limited to reexamination of factual issues. However, it is reasonable to suggest that the Legislature intended the term to cover legal issues as well. This inference flows from the fact that the preceding subdivision of section 170.6 provides that peremptory challenges may be exercised in any proceeding involving a contested issue of *law or fact*.[7]

■ Regardless of subject matter however, section 656 leaves no doubt that a new trial must consist of a "reexamination." In order to conduct a reexamination, a court must revisit some factual or legal issue that was in controversy in the prior proceeding. All of the civil appellate decisions we have reviewed here are consistent with this principle. (*Stegs, supra,* 233 Cal.App.3d at p. 576 ["trial court was called upon to *retry* the case, albeit on a single issue"]; *Hendershot, supra,* 20 Cal.App.4th at p. 865 [on remand, alter ego issue "will be reexamined"]; *Stubblefield, supra,* 81 Cal.App.4th at p. 766 ["Our partial reversal requires that the case be *reopened,* with an actual trial if necessary" (italics added)]; *Pfeiffer, supra,* 107 Cal.App.4th at pp. 764, 768 [reversal and remand required trial judge to reconsider the merits of a SLAPP motion in order to determine the propriety of a fee award].)

In the present case, our remand requires no reopening or reconsideration of issues litigated in prior proceedings conducted by Judge Golden. All liability issues have been fully and finally settled by our decision in *Paterno II.* The only task the judge must complete is to conduct a trial to determine the amount of damages petitioners have suffered as a result of the flood, and to enter judgment accordingly. Judge Golden's function at this point is not to go back and revisit any factual or legal terrain that has thus far been traversed, but to go *forward* with a trial on the issue of damages. While the analogy is not perfect, the judge's assignment after remand here bears considerable resemblance to the postverdict sentencing hearing conducted by the trial judge in *Peracchi, supra,* 30 Cal.4th 1245.

---

[7] Section 170.6, subdivision (a)(1), provides: "No judge, court commissioner, or referee of any superior court of the State of California shall try any civil or criminal action or special proceeding of any kind or character nor hear any matter therein that *involves a contested issue of law or fact* when it shall be established as hereinafter provided that the judge or court commissioner is prejudiced against any party or attorney or the interest of any party or attorney appearing in the action or proceeding." (Italics added.)

We take no issue with prior cases that have promoted a broad construction of "new trial" in service of the Legislature's intent.[8] This " 'does not mean, however, that the language of the statute must be stretched and strained beyond the limitation of reason.' " (*In re James B.* (2003) 109 Cal.App.4th 862, 869 [135 Cal.Rptr.2d 457], quoting *People v. Malcolm* (1975) 47 Cal.App.3d 217, 222 [120 Cal.Rptr. 667].)

Petitioners' construction of the statute would jettison the reexamination requirement, thereby rendering a central element of the term "new trial" meaningless. This is a result we are "constrained to avoid." (*Pacific Southwest Realty Co. v. County of Los Angeles* (1991) 1 Cal.4th 155, 169 [2 Cal.Rptr.2d 536, 820 P.2d 1046].) Had the Legislature intended that a new peremptory challenge be permitted every time there was a contested hearing following reversal on appeal, it could easily have so provided. Indeed, as *Peracchi* points out, a prior version of the 1985 bill *did* contain such language, but was rejected in favor of the "new trial" proviso.[9]

■ Our decision today is compatible with the Legislature's intent in enacting section 170.6(a)(2). Like the California Supreme Court, we find no basis for supposing the Legislature intended "that a section 170.6 challenge will lie whenever the potential exists that a judge who is called upon to exercise discretion might react adversely to a reversal." (*Peracchi, supra,* 30 Cal.4th at p. 1262.) Assuming that the lawmakers were concerned about a situation where a trial judge might react negatively to having his or her rulings reversed on appeal, it is also reasonable to conclude that the potential for bias is substantially diminished where the proceeding to be conducted on remand steers clear of any issues upon which the appellate court has ruled. By inserting the term "new trial" in section 170.6(a)(2), the Legislature made it plain that a new peremptory challenge following a reversal on appeal will only be permitted where the court is required to reexamine issues litigated in the prior proceeding.

---

[8] We disagree, however, with the suggestion in *Pfeiffer* that whenever a trial judge on remand "will be acting in more than a ministerial manner" the hearing constitutes a "new trial" for purposes of section 170.6(a)(2). (*Pfeiffer, supra,* 107 Cal.App.4th at p. 768.) The distinction turns not on whether the judge is performing discretionary or ministerial tasks, but whether the postappeal hearing requires reexamination of contested issues of fact or law.

[9] "Initially, the language of the proposed amendment apparently would have applied to any hearing on remand, but that language was amended to refer instead to cases in which the trial judge was assigned to conduct a *new trial.* (Compare § 170.6[(a)](2) with Assem. Bill No. 1213 (1985–1986 Reg. Sess.) as introduced Mar. 4, 1985, § 1 [stating that following reversal of a trial court's decision, a challenge may be made 'upon assignment of the trial judge in the prior proceedings to rehear the matter'].)" (*Peracchi, supra,* 30 Cal.4th at p. 1262.)

## DISPOSITION

The petition for a peremptory writ of mandate is denied. The alternative writ and stay are discharged with the finality of this opinion. The parties shall bear their own costs. (*Coors Brewing Co. v. Stroh* (2001) 86 Cal.App.4th 768, 780 [103 Cal.Rptr.2d 570]; rule 56.4(a).)

Blease, Acting P. J., and Raye, J., concurred.

A petition for a rehearing was denied November 16, 2004, and petitioners' petition for review by the Supreme Court was denied January 12, 2005.