Filed 9/30/16  True Crime, LLC v. Superior Court CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| TRUE CRIME, LLC,<br><br>    Petitioner,<br><br>  v.<br><br>THE SUPERIOR COURT OF LOS ANGELES COUNTY,<br><br>    Respondent;<br><br>ANNE GREENE,<br><br>    Real Party in Interest. | B275596<br><br>(Los Angeles County<br>Super. Ct. No. BC497183) |

ORIGINAL PROCEEDINGS in mandate. Barbara M. Scheper, Judge.  Petition granted.

Reed Smith, Harrison J. Dossick, Christine M. Neuharth, Kasey J. Curtis, and Paul D. Fogel, for Petitioner.

No appearance for Respondent.

Keith A. Fink & Associates, Keith A. Fink, Olaf J. Muller, and London A. Venturelli, for Real Party in Interest.

True Crime, LLC, has petitioned for a writ of mandate to set aside an order granting real party in interest Anne Greene's motion to disqualify Judge Barbara M. Scheper. We agree that the order was issued in error and grant the petition.

## FACTUAL AND PROCEDURAL SUMMARY

In 2011, Greene was hired to perform in an episode of "Femme Fatales," a television series produced by True Crime. A year later, she sued True Crime for sexual harassment, intentional infliction of emotional distress, and negligent hiring and supervision, on allegations that she had been coerced into appearing nude and performing acts of sexual intercourse on a non-closed set, with malfunctioning props and without full disclosure. In 2014, True Crime cross-complained for breach of contract, breach of the implied covenant of good faith and fair dealing, and promissory estoppel. The cross-complaint alleged that although Greene had signed a nudity rider, informing her she might need to appear in "nude" and "simulated lovemaking scenes," she refused to perform in such a scene on the second day of shooting and had to be accommodated, delaying production by one day and requiring a body double to be hired for her. The cross-complaint included several paragraphs specifically refuting allegations in Greene's complaint.

Greene filed a special motion to strike the cross-complaint under the anti-SLAPP statute, Code of Civil Procedure section 425.16,[1] and a motion to strike the references to her complaint. In October 2014, Judge Scheper denied the anti-SLAPP motion, finding that True Crime's claims in the cross-complaint did not arise from Greene's lawsuit, that they were not barred by the litigation privilege, and that True Crime was likely to prevail on the merits of its cross-complaint. The judge denied Greene's request to strike the objectionable references to the complaint. In a separate order in December 2014, Judge Scheper granted True Crime's motion for attorney fees. She found the anti-SLAPP motion to be frivolous because no reasonable attorney could conclude that the breach of

---

[1] Subsequent undesignated statutory references are to the Code of Civil Procedure.

contract claims in the cross-complaint arose from the complaint rather than from the private business dispute that preceded it.

We consolidated Greene's appeals from the two orders in *Greene v. True Crime*, LLC (Mar. 11, 2016, No. B260333 [nonpub. opn.]). We affirmed the order denying Greene's anti-SLAPP motion on the sole ground that True Crime's cross-complaint did not arise from Greene's protected activity in filing a complaint. We did not reach Judge Scheper's alternative ground for denying the motion—that True Crime was likely to prevail on its cross-complaint. We reversed the order granting True Crime's motion for attorney fees, holding that Greene's motion was not frivolous because the cross-complaint did include references to Greene's complaint, even though they were irrelevant to the breach of contract claims.

After the remittitur issued, Greene moved to disqualify Judge Scheper under section 170.6. In May 2016, Judge Scheper granted the motion and the case was reassigned to Judge Mel Red Recana.[2] At True Crime's request, we issued an alternative writ and a temporary stay in June 2016. In August 2016, we received Judge Scheper's minute order, in which she stated she was willing to comply with the alternative writ but believed she had no authority to do so because the case had been reassigned.

## DISCUSSION

Section 170.6 allows a party in a civil or criminal case to move to disqualify the assigned judge on affirmation that the judge is prejudiced against the party. (*Peracchi v. Superior Court* (2003) 30 Cal.4th 1245, 1252 (*Peracchi*).) Although such a peremptory challenge generally must be brought early in the proceedings, the statute was amended in 1985 to allow a disqualification motion to be brought "following reversal on appeal of a trial court's decision, or following reversal on appeal of a trial court's final judgment, if the trial judge in the prior proceeding is assigned to conduct a new trial on the matter."

---

[2] On True Crime's motion to disqualify Judge Recana, the case was reassigned to Judge Elizabeth Feffer.

3

(§ 170.6, subd. (a)(2); *Peracchi*, at p. 1253.) The goal of the amendment was to protect parties "from the bias that a trial judge might exhibit after a reversal." (*Id*. at p. 1262.)

The parties disagree whether section 170.6 should be liberally construed to apply whenever a trial judge whose decision in a case is reversed on appeal is assigned to perform more than a ministerial task in the case after a remittitur because the potential of bias exists in such a situation. Greene relies on older cases for this broad proposition. (See, e.g., *Hendershot v. Superior Court* (1993) 20 Cal.App.4th 860, 865 (*Hendershot*), citing *Nissan Motor Corp. v. Superior Court* (1992) 6 Cal.App.4th 150, 154 [§ 170.6 "should be liberally construed to effect its objects and to promote justice"]; *Stegs Investments v. Superior Court* (1991) 233 Cal.App.3d 572, 575–576 (*Stegs*) ["If the court's function is merely a ministerial act (such as the recalculation of interest), the 1985 amendment does not apply. If, however, the court must conduct an actual retrial, even if that trial involves only one issue, the court may be disqualified"].)

True Crime relies on *Peracchi*, *supra*, 30 Cal.4th 1245, a more recent decision of the California Supreme Court. "[W]ith respect to the assertion that section 170.6 must be given a liberal construction," the court in that case reasoned that "because of the dangers presented by judge-shopping—by either party—the limits on the number and timing of challenges pursuant to this statute are vigorously enforced. [Citation.] We do not believe that the 1985 amendment of section 170.6, [former] subdivision (2)[, now subdivision (a)(2)] was intended to eliminate all restrictions on the challenge or to counter every possible situation in which it might be speculated that a court could react negatively to a reversal on appeal." (*Id*. at p. 1263.)

*Peracchi*, *supra*, 30 Cal.4th 1245, 1249 was a criminal case involving a remand for resentencing on a reversed count. While the court acknowledged the broad definition of "new trial" in civil cases,[3] it declined to apply that definition in the context of a

---

[3] Section 656 defines "new trial" as "a re-examination of an issue of fact in the same court after a trial and decision by a jury, court, or referee." The term applies in a wide variety of cases, including those dismissed after sustaining a demurrer or where judgment was taken by default. (*Hendershot*, *supra*, 20 Cal.App.4th at p. 865.) In

criminal case. (*Id.* at p. 1254.) Nevertheless, courts in civil cases have since characterized *Peracchi* as generally breaking "the pattern of appellate decisions advancing ever more generous interpretations of the term 'new trial' [citation]" (*Paterno v. Superior Court* (2004) 123 Cal.App.4th 548, 558 (*Paterno*) and as disagreeing that "'the Legislature intended to protect, in *all* circumstances, parties who have prevailed on appeal from the presumed ire or potential bias of trial judges whose rulings have been reversed.' [Ciitation.]" (*State Farm Mutual Automobile Ins. Co. v. Superior Court* (2004) 121 Cal.App.4th 490, 498 (*State Farm*).)

As *State Farm*, *supra*, 121 Cal.App.4th 490 explains, the question is not whether the court would perform more than a ministerial task after reversal, but whether the case is to be "'retried' or 'reopened'" on remand. (*Id.* at p. 503.) According to the court in *Paterno*, *supra*, 123 Cal.App.4th 548, "the potential for bias is substantially diminished where the proceeding to be conducted on remand steers clear of any issues upon which the appellate court has ruled. By inserting the term 'new trial' in section 170.6(a)(2), the Legislature made it plain that a new peremptory challenge following a reversal on appeal will only be permitted where the court is required to reexamine issues litigated in the prior proceeding." (*Id.* at p. 561.)

Greene argues that, here, Judge Scheper would be required to conduct a new trial and reexamine issues litigated before because a summary trial-like proceeding has already taken place at the anti-SLAPP stage of the case. A new trial for purposes of section 170.6, subdivision (a)(2) occurs following reversal of summary judgment, hence justifying a peremptory challenge if the case is reassigned to the same judge on remand. (*Stubblefield Construction Co. v. Superior Court* (2000) 81 Cal.App.4th 762, 766 (*Stubblefield*).) Greene is correct that an anti-SLAPP motion gives rise to a proceeding similar to a motion for summary judgment. The anti-SLAPP statute, section 425.16,

*Hendershot,* the term was broadly construed to apply to "a posttrial reversal and remand for trial of a contested issue in which trial court discretion or fact determination is involved." (*Ibid*.) The court tempered this broad construction with the additional observation that one of the issues contested at the original trial in that case would have to be reexamined on remand. (*Ibid*.)

5

subdivision (b)(1), establishes a two-prong analysis: First, the court must determine whether the moving party has made a threshold showing that the challenged claim arises from a protected act in furtherance of the right of petition or free speech. (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 192.) Second, the court must determine whether the party opposing the motion has demonstrated a probability of prevailing on the claim. (*Ibid*.) An anti-SLAPP motion is a "summary-judgment-like procedure at an early stage of the litigation [citation]" (*ibid*) because "[e]vidence is considered, but not weighed. If the initial evidentiary burden is met by the moving party, the burden shifts to the party opposing the motion to avoid dismissal of the action. [Citation.]" (*Simmons v. Allstate Ins. Co.* (2001) 92 Cal.App.4th 1068, 1073.) It follows that granting an anti-SLAPP motion constitutes a "trial" because the court has determined that the party opposing the motion is not likely to prevail on the merits of its claims at trial. (*State Farm*, *supra*, 121 Cal.App.4th at p. 501.)

It does not follow, however, that a peremptory challenge under section 170.6, subdivision (a)(2) is justified where, as here, an order *denying* an anti-SLAPP motion is *affirmed* on appeal. Here, the trial court concluded that Greene, the moving party, did not meet her initial burden under the anti-SLAPP statute to show that True Crime's cross-complaint arose from protected petitioning activity, i.e. from the filing of her complaint, and denied the anti-SLAPP motion. On appeal, we agreed with this conclusion and affirmed the court's order denying the motion. Regardless of the liberal construction given to the term "new trial" in civil cases, Greene does not meet the separate requirement of section 170.6, subdivision (a)(2) that there must be "a reversal on appeal of a trial court's final judgment." Most of the authorities on which she relies are inapposite because they involve the complete or partial reversal of such a judgment on appeal. (See *Stubblefield*, *supra*, 81 Cal.App.4th 762 [summary judgment reversed in part]); *Hendershot*, *supra*, 20 Cal.App.4th 860 [judgment against corporation and individual reversed as to individual]; *Stegs*, *supra*, 233 Cal.App.3d 572 [judgment in partnership dissolution action reversed in part].) Unlike those cases, this case will not be "reopened" or "retried" because it never reached a final judgment in the trial court.

6

Our conclusions that the cross-complaint did not arise out of Greene's complaint and that the references to the complaint in the cross-complaint were irrelevant to True Crime's breach of contract claims are law of the case on remand, and we see no reason why they would need to be relitigated by either party. Since the references to the complaint in the cross-complaint have no bearing on True Crime's causes of action, there is no reason for Greene to assert the litigation privilege, which protects communications made within judicial proceedings. (Civ. Code, § 47.)[4]

That the trial court gratuitously expressed its view on the merits of True Crime's case under the second prong of the anti-SLAPP statute makes no difference to the analysis under the provision of section 170.6, subdivision (a)(2), on which Greene relies. A ruling on the merits was unnecessary to the court's decision to deny the motion under the first prong of the anti-SLAPP statute, and on appeal we expressed no opinion on the court's reasoning regarding the merits. While Judge Scheper's preliminary view of the merits of True Crime's cross-complaint appears to have been unfavorable to Greene, that in itself does not justify a peremptory challenge against her at this stage of the proceeding. Nor is there reason to believe the judge would be "piqued" by our affirmance of her order denying the anti-SLAPP motion in the prior appeal, or harbor bias in future proceedings on issues we did not reach. (See *Paterno*, *supra*, 123 Cal.App.4th at pp. 557, 561.)

Section 170.6, subdivision (a)(2) applies not only after reversal of a final judgment, but also after reversal of a trial court's decision. The only decision we reversed in the prior appeal was that granting True Crime's attorney fee motion under the anti-SLAPP statute, section 425.16, subdivision (c)(1). However, Greene's analogy of that reversal to the situation in *Pfeiffer Venice Properties v. Superior Court* (2003) 107 Cal.App.4th 761 (*Pfeiffer II* is misplaced. In that case, the trial court used its inherent powers to dismiss a landlord's oppressive lawsuit against tenants for *de minimis*

---

[4] Nothing in our prior opinion precludes True Crime from defending against the allegations in Greene's complaint by way of a proper answer and presentation of evidence.

damages, but declined to rule on the tenants' anti-SLAPP motion. (*Pfeiffer Venice Properties v. Bernard* (2002) 101 Cal.App.4th 211, 214, 219 (*Pfeiffer I*).) The landlord abandoned its appeal from the dismissal of its case. (*Id*. at p. 214.) Subsequently, the trial court denied the tenants' attorney fee motion for lack of jurisdiction. (*Id.* at p. 215.) The appellate court reversed the order denying attorney fees, and remanded the matter for a ruling on the anti-SLAPP motion because a ruling on that pending motion was a pre-requisite to deciding the fee issue, even though the landlord's case had been dismissed in the interim. (*Id*. at pp. 218, 219.) On remand, the landlord peremptorily challenged the trial judge to whom the case was reassigned, and the judge struck the challenge. (*Pfeiffer II*, at p. 764.) The appellate court granted the landlord's petition for writ of mandate, reasoning that, on remand, "the trial court must make factual findings regarding the merits of [the] SLAPP motion in order to determine the propriety of a fee award. It will be acting in more than a ministerial manner. Accordingly, it will be conducting a new trial for purposes of a section 170.6, subdivision [(a)](2) challenge." (*Pfeiffer II*, at p. 768.)

To the extent *Pfeiffer II*, *supra*, 107 Cal.App.4th at page 768 may be read to suggest that a new trial occurs whenever a trial judge "will be acting in more than a ministerial manner," subsequent cases have either disagreed with it (see *Paterno*, *supra*, 123 Cal.App.4th at p. 561, fn. 8), or declined to read it in that way. (See *State Farm*, *supra*, 121 Cal.App.4th at p. 503.) As the court in *State Farm* explained, disqualification after reversal rests on whether a case will be "retried" or "reopened." (*Ibid*.) That certainly was the case in *Pfeiffer II*, where the trial court was required to consider the merits of the tenants' anti-SLAPP motion (and therefore the merits of the landlord's case) after that case had already been dismissed and after the court had declined to rule on the motion.

By contrast, in this case, the reversal of the order granting attorney fees does not require the court to reopen or retry any matter. A party successfully opposing an anti-SLAPP motion is entitled to attorney fees if the motion is frivolous or solely intended to cause unnecessary delay. (§ 425.16, subd. (c)(1).) The discussion of the issue of

8

frivolousness, both by the trial court and by this court, was limited to the first prong of the anti-SLAPP statute: whether the cross-complaint arose from the filing of the complaint. Like the trial court, we concluded that it did not. Neither the trial court, nor this court examined the relative merits of the complaint and cross-complaint in relation to the order granting attorney fees. Our only disagreement with the trial court was over its conclusion whether a reasonable attorney would believe the references in the cross-complaint to Greene's complaint justified bringing an anti-SLAPP motion. In reversing the order granting fees, we did not direct the trial court to reconsider any issues relevant to the anti-SLAPP motion or to attorney fees under the anti-SLAPP statute. Thus, Judge Scheper was not expected to conduct a new trial on any matter that was implicated in the decision we reversed in the prior appeal.

We disagree with Greene that True Crime is judicially estopped from challenging her disqualification motion in this writ proceeding because it filed a successful post-remittitur challenge. The doctrine of judicial estoppel prevents a party from taking a position "totally inconsistent" with an earlier successfully asserted position. (*Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 183.) It does not apply in this case because True Crime did not file a challenge against Judge Scheper under the second paragraph of 170.6, subdivision (a)(2), on which Greene relies. Rather, it challenged Judge Recana under the first paragraph of that subdivision on a general affirmation that the judge was prejudiced against it.

9

## DISPOSITION

The petition for writ of mandate is granted. The trial court is directed to vacate its May 26, 2016 order granting Greene's 170.6, subdivision (a)(2) challenge against Judge Scheper, and enter a new order denying that challenge and reassigning the case back to that judge. True Crime is entitled to its costs in this writ proceeding.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EPSTEIN, P. J.

We concur:

WILLHITE, J.

COLLINS, J.