[No. B178401. Second Dist., Div. Seven. Feb. 2, 2005.]

ROBERT E. GEDDES, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
H. ALEXANDER CAMPBELL et al., Real Parties in Interest.

418

## COUNSEL

Hennigan, Bennett & Dorman, J. Michael Hennigan, Lee W. Potts and Thomas B. Watson for Petitioner.

No appearance for Respondent.

Gibson, Dunn & Crutcher, James P. Fogelman and Eileen M. Ahern for Real Parties in Interest.

## OPINION

**ZELON, J.**—Petitioner Robert E. Geddes (Geddes) seeks a writ of mandate compelling the trial court to vacate its order rescinding its grant of Geddes's peremptory challenge to Judge Jon Mayeda under Code of Civil Procedure section 170.6[1] made after this matter was reversed on appeal for the failure of the trial court to adequately specify its reasons for granting summary judgment. The matter was reassigned to Judge Susan Bryant-Deason, who recognized that disqualification under section 170.6 was not legally warranted, and requested the matter be reassigned to Judge Mayeda so that he could reconsider and vacate his erroneous ruling. Petitioner contends that Judge Mayeda's ruling vacating his own disqualification must be vacated because (1) Judge Mayeda lacked jurisdiction to review his own ruling after his disqualification, making writ review the only avenue of relief; and (2) section 170.6 mandates Judge Mayeda's disqualification because the matter was reversed on appeal. We disagree. While Judge Mayeda could not properly reconsider his ruling once he granted the section 170.6 challenge, the trial court has authority to resolve such situations without requiring the parties to seek review by way of extraordinary writ.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY[2]

Defendants represented the selling parties in connection with the purchase by Nashville Country Club, Inc. (NCCI) of a 51 percent interest in a group of

---

[1] All statutory references herein, unless otherwise noted, are to the Code of Civil Procedure.

[2] A portion of the factual statement herein is taken from the prior appeal in this matter, *Geddes v. H. Alexander Campbell* (Mar. 16, 2004, B165133 [nonpub. opn.]).

companies known as Avalon West Coast (AWC), which included the Irvine Meadows Amphitheatre Partnership (IMA). Geddes was the comanaging partner of IMA, and the Geddes Family Trust owned all of the stock of Audrey & Jane, Inc. (A&J), which owned 25 percent of IMA. Another 50 percent of IMA was owned by IMA Corp., which was in turn owned by Donald Koll; the remaining 25 percent of IMA was owned by Shelli Meadows, Inc. Koll agreed to sell 99 percent of IMA Corp.'s 50 percent interest in IMA to A&J for $3 million; A&J then sold a 51 percent interest in IMA to NCCI for $6 million. Campbell acted as counsel for AWC in the transaction, and negotiated an employment agreement with NCCI for Geddes.

Less than a year later, SFX Entertainment acquired 100 percent of IMA from its owners, NCCI, A&J, and Shelli Meadows, Inc., for approximately $26 million; Campbell represented the sellers in the transaction. Thereafter, Koll sued Geddes for failing to fully disclose the terms of the NCCI acquisition, and for breaching his fiduciary duties under the IMA partnership agreement.

Geddes sued Campbell and Paul Hegness, his California counsel, for legal malpractice and breach of fiduciary duty for failing to advise him that the transactions could be in conflict with the IMA partnership agreement, and for failing to advise him to make full disclosures to Koll and obtain releases and waivers from Koll concerning the transaction. Campbell moved for summary judgment on the grounds that Campbell had no duty to Geddes because he did not represent him as an individual in the transactions, and as a result, Geddes had no standing. In a deposition, Geddes admitted that Campbell did not represent him in an individual capacity.

The trial court concluded that Geddes lacked standing to assert claims of professional negligence and breach of fiduciary duty against Campbell because Campbell did not represent Geddes as an individual in the transaction, and rejected Geddes's argument that, because Campbell represented numerous entities of which Geddes was a principal, Campbell also represented Geddes individually.

Plaintiff appealed, and this court reversed the grant of summary judgment on the grounds that the trial court failed to provide a statement of reasons and supporting evidence as required by section 437c, subdivision (g). (*Geddes v. H. Alexander Campbell* (Mar. 16, 2004, B165133) [nonpub. opn.].)

After remand, on May 27, 2004, Geddes moved to exercise his right to a peremptory challenge pursuant to section 170.6 to Judge Mayeda, the judge who had ruled on the summary judgment motion. Geddes's motion did not attach a copy of this court's opinion.

On June 1, 2004, the trial court granted the motion, finding the peremptory challenge was timely and in proper form, and ordered the matter transferred to Department One for reassignment.

On June 2, 2004, Judge Carolyn Kuhl in Department One transferred the matter to Judge Susan Bryant-Deason. Judge Kuhl made the reassignment without having had a chance to review defendants' opposition or this court's opinion, which was not attached to Geddes's section 170.6 request.

On June 2, 2004, defendants filed an opposition to the peremptory challenge, arguing that the section 170.6 motion was improper because the matter had been remanded for a ministerial act, i.e., for the court to clarify the basis for its summary judgment motion in order to conform to section 437c, subdivision (g).

On June 2, 2004, defendants filed a request for status conference, and requested that the trial court consider a new proposed order granting summary judgment which gave a detailed explanation of reasons and evidence in support of the trial court's grant of summary judgment. Defendants attached to their request a 22-page proposed order granting summary judgment.

On June 4, 2004, the trial court scheduled a status conference for July 6, 2004.

On June 6, 2004, defendants filed a motion to vacate the reassignment of the case to Judge Bryant-Deason, and requested the court to transfer the case back to Judge Mayeda. Defendants argued that Geddes was not entitled to reassignment of the case because the effect of the Court of Appeal opinion was only to order a ministerial act.

On June 18, 2004, Geddes opposed the motion to vacate, arguing that one superior court judge lacked jurisdiction to vacate the order of another trial judge and that review could be had only through mandamus proceedings in the court of appeal. Furthermore, he asserted that the grant of the motion for reassignment was correct because a trial judge who is reversed on appeal may be disqualified pursuant section to 170.6. Defendants contended that relief was available at the trial court level, and that writ relief was not necessary.

On July 1, 2004, Judge Bryant-Deason considered the motion, found it to be timely under section 1008, and took it off calendar after finding that the she had no jurisdiction to rule on the motion because she could not reconsider the motion of another judge. Judge Bryant-Deason transferred the matter to Judge Kuhl in Department One with the suggestion that it be transferred to Judge Mayeda to permit him to reconsider his ruling.

On July 19, 2004, Judge Kuhl issued an order transferring the case back to Department 72 to permit Judge Mayeda to reconsider his prior ruling. Commenting that it was unclear whether a judge could reconsider his or her own grant of a peremptory challenge, Judge Kuhl referenced a recent unpublished decision, *Vinci v. Superior Court* (May 28, 2003, B164452 [nonpub. opn.]) in which Division Four of this district concluded that a disqualified judge may not vacate his or her own disqualification under section 170.6. Judge Mayeda set hearing for October 1, 2004.

At the October 1, 2004, reconsideration hearing, Geddes argued that once Judge Mayeda granted the peremptory challenge and transferred the case out of Department 72, he no longer had jurisdiction to reconsider his own motion. Judge Mayeda concluded he was able to reconsider his ruling, and vacated his grant of Geddes's motion under section 170.6, advising counsel it would consider the form of order granting summary judgment.

## DISCUSSION

Geddes contends that: he had the right to exercise a peremptory challenge because this court's remand of the matter required the trial court to conduct a "new trial" within the meaning of section 170.6, subdivision (a)(2); the trial court erred in transferring the matter back to Judge Mayeda because he had no jurisdiction to reconsider his previous order; and the only avenue for review of an erroneously granted section 170.6 motion is by writ. While we agree with Geddes that Judge Mayeda could not properly reconsider the order, we disagree on the remedy. In these circumstances a trial court may properly assign another judge to reconsider the disqualification order. Moreover, on this record, Geddes had no right to exercise the peremptory challenge in the first instance.

A. *Geddes Was Not Entitled to File a Peremptory Challenge Against Judge Mayeda Because This Court Did Not Reverse the Grant of Summary Judgment on the Merits.*

Section 170.6 permits a peremptory challenge to be made when the same trial judge is assigned for a new trial after reversal on appeal in order to avoid potential bias on the part of a judge who had been reversed on appeal. (§ 170.6, subd. (a)(2);[3] *Stegs Investments v. Superior Court* (1991) 233 Cal.App.3d 572, 575 [284 Cal.Rptr. 495] (*Stegs*).) Section 170.6 applies only where the matter is to be retried, not where it is remanded with instructions

---

[3] Section 170.6, subdivision (a)(2) provides in relevant part that "A motion under this paragraph may be made following reversal on appeal of a trial court's decision, or following reversal on appeal of a trial court's final judgment, if the trial judge in the prior proceeding is assigned to conduct a new trial on the matter."

that require the trial court to complete a judicial task not performed in the prior proceeding.[4] In the context of this statute, a retrial is a "reexamination" of a factual or legal issue that was in controversy in the prior proceeding. (*Paterno v. Superior Court* (2004) 123 Cal.App.4th 548, 560 [20 Cal.Rptr.3d 282]; *Pfeiffer Venice Properties v. Superior Court* (2003) 107 Cal.App.4th 761, 767 [132 Cal.Rptr.2d 400]; see § 656 ["A new trial is a re-examination of an issue of fact in the same court after a trial and decision by a jury, court or referee."].)

■ In *State Farm Mutual Automobile Ins. Co. v. Superior Court* (2004) 121 Cal.App.4th 490 [17 Cal.Rptr.3d 146], the court discussed situations in which section 170.6 would apply: (1) reversal of a summary judgment motion on the merits; (2) remand for an evidentiary hearing and factual determination after a bench trial in a civil action where the judgment was reversed on appeal; (3) dismissal of a civil action at the pleading stage where the matter was remanded for a factual determination on the merits of the defendants' anti-SLAPP motion; (4) dismissal of a criminal complaint reversed on appeal on statute of limitations grounds; and (5) direction by the court of appeal on mandate to declare a mistrial in a criminal case. (*Id.* at p. 497.)

■ Here, the matter was remanded after we reversed the grant of summary judgment based on the trial court's failure to comply with the mandates of the Code of Civil Procedure. Unlike *Stubblefield Construction Co. v. Superior Court* (2000) 81 Cal.App.4th 762 [97 Cal.Rptr.2d 121], the previous opinion in this case did not determine "that the trial judge erred in a crucial decision of law." (*Id.* at p. 766) Instead, we determined that the trial court failed to state the facts and law upon which it based its decision in a sufficiently detailed manner to allow meaningful review, and this court did not reach the merits of the trial court's reasoning because it could not do so. Rather than requiring that the case be reopened, we remanded the matter for the preparation and entry of an order thoroughly explaining the grounds of the trial court's decision, a task that only the trial judge who had decided the motion was capable of performing. While compliance with our mandate to satisfy the requirements of section 437c, subdivision (g) will necessarily require the trial court to review its prior analysis of the motion, we did not remand the case for reconsideration of the merits of the ruling, and such a fundamental reexamination of the motion is unnecessary.[5] ■ Although there may be some potential that the trial court could react adversely to our

---

[4] Even if reexamination or reconsideration of a specific issue is required on remand, if the task to be performed is ministerial in nature, no new peremptory challenge is permitted by section 170.6. (*Stegs, supra,* 233 Cal.App.3d at p. 575.)

[5] That in the performance of this task the trial court might conclude it had erred in granting summary judgment does not alter our conclusion that a reversal and remand for compliance with the requirements of section 437c, subdivision (g) does not require a reexamination of the summary judgment motion *ab initio*. Nor does the fact that a trial court retains the sua sponte

reversal of its initial decision in this case, as petitioner suggests, that hypothetical risk, standing alone, is not a sufficient basis to expand the right to a peremptory challenge under section 170.6 to include a remand under section 437c, subdivision (g). (See *Peracchi v. Superior Court* (2003) 30 Cal.4th 1245, 1262 [135 Cal.Rptr.2d 639, 70 P.3d 1054] [§ 170.6 challenge does not lie whenever the potential exists that a judge who is called upon to exercise discretion might react adversely to a reversal; the statute is not to be liberally construed].)

B. *Judge Bryant-Deason Could Properly Review Judge Mayeda's Ruling on the Peremptory Challenge.*

Having concluded that Geddes was not entitled to a peremptory challenge in the first instance, we turn to the question of whether the matter was properly routed back to Judge Mayeda for his ultimate ruling, whether Judge Mayeda had the authority to reconsider his prior ruling on the section 170.6 motion, and the appropriate remedy given the procedural complexities of this case. Three conflicting principles led to the procedural puzzle confronting the trial court: the rule that one trial judge may not review the ruling of another; the trial court's inherent power to correct its own rulings; and the loss of an individual judge's authority to act on a case after the granting of a motion under section 170.6. (See, e.g., *In re Alberto* (2002) 102 Cal.App.4th 421, 427–428 [125 Cal.Rptr.2d 526] [one judge may not review ruling of another]; *Wozniak v. Lucutz* (2002) 102 Cal.App.4th 1031, 1042 [126 Cal.Rptr.2d 310] [trial court's inherent power to review rulings]; *Brown v. Superior Court* (1981) 124 Cal.App.3d 1059, 1061 [177 Cal.Rptr. 756] [court loses authority to rule on a case after grant of section 170.6 motion].)

■ Procedurally, a section 170.6 motion may be filed without notice, and if "duly presented," must be granted "without any further act or proof." (§ 170.6, subd. (a)(2), (3).) Where a trial judge is compelled to grant a section 170.6 motion, his or her individual court is immediately divested of authority to rule in the case, and may not hear any other matter therein that involves a contested issue of law or fact. (*Brown v. Superior Court, supra,* 124 Cal.App.3d at p. 1061.) ■ After the grant of a peremptory challenge in the Los Angeles Superior Court, the matter is transferred to the presiding judge who makes department assignments in conformity with the local rules, and the matter is assigned to another department. (Super. Ct. L.A. County, Local Rules, rule 1.0.)

■ Generally, one trial judge may not review the ruling of another trial judge because the superior court, although comprised of many judges, is a

authority to reexamine its prior rulings create in the parties the right to a peremptory challenge under section 170.6.

single court. (*In re Alberto, supra,* 102 Cal.App.4th at p. 427.) This principle, however, does not apply where the original judge is "unavailable." (See, e.g., *Ziller Electronics Lab GmbH v. Superior Court* (1988) 206 Cal.App.3d 1222, 1232 [254 Cal.Rptr. 410].) As noted in *Ziller,* this exception "reconciles the jurisdiction of a trial court to reconsider and correct its erroneous interim rulings to achieve justice [citation] with the general rule's recognition of the comity between judges of a trial court." (*Ibid.*) Where a judge has been disqualified, the newly assigned judge may review the ruling of the disqualified judge because the disqualified judge, having no authority to rule, is "unavailable." Any comity concern that ordinarily would preclude the second judge from reviewing the first judge's ruling would not prevent the court from making rulings necessary to resolve the matter.[6] If the second judge finds the disqualification is erroneous, the first judge's authority to rule on the matter would be reinstated. (See, e.g., *Stephens v. Superior Court* (2002) 96 Cal.App.4th 54, 64–65 [116 Cal.Rptr.2d 616] [A section 170.6 motion to disqualify a judge was initially heard by a second judge; held the second judge retained jurisdiction to rescind the order disqualifying the first judge, and as a result the first judge was "effectively placed . . . in the position of never having been disqualified."])

*Stephens,* however, did not address the issue of a judge reviewing his or her own disqualification motion, although it endorses trial court reconsideration of such erroneously granted motions. Here, Judge Mayeda was placed in the position of erroneously disqualifying himself because he did not have a sufficient factual record (the text of this court's opinion) to make a correct ruling. Furthermore, because the statute requires urgent action and his disqualification was immediately effective, he lost the power to reconsider his own order under section 1008. Hence, because Judge Mayeda became unavailable, Judge Bryant-Deason properly could have reconsidered Judge Mayeda's ruling.

■ We reject Geddes's argument that a writ petition is the exclusive method to review the actions of a disqualified judge. The fact that an appeal may not be taken does not preclude expeditious and economical remedies in the trial court. The inherent authority vested in the trial court to reconsider its own rulings (see, e.g. *Darling, Hall & Rae v. Kritt* (1999) 75 Cal.App.4th 1148, 1156–1157 [89 Cal.Rptr.2d 676] and *Wozniak v. Lucutz, supra,* 102 Cal.App.4th 1031) allows the court, in these circumstances, to correct the error even where, as here, the original judge had no authority to vacate the erroneously granted order.

---

[6] Another narrow exception, not applicable here, exists where the ruling was made through inadvertence, fraud, or mistake. (*In re Alberto, supra,* 102 Cal.App.4th at p. 430.)

The appropriate procedure in this case would have been for Judge Bryant-Deason, on her assignment to the matter, to consider on the merits the motion for reconsideration and on the record before her, to grant it. That procedure was not followed. While we could remand with instructions to do so, we have already ruled that the disqualification of Judge Mayeda must be vacated. As it would serve neither the interests of the parties nor the trial court to further delay this matter, we will not remand for those purposes, but will instead vacate the disqualification and direct that, on remand, the matter be reassigned to Judge Mayeda for further proceedings consistent with this opinion, and our earlier opinion in this matter.

## DISPOSITION

Petition for writ of mandate granted. The order vacating the disqualification is vacated. On remand, the respondent court is directed to reassign the matter to Judge Mayeda for further proceedings consistent with the opinions of this court in this matter. Real parties in interest are entitled to their costs on appeal.

Perluss, P. J., and Johnson, J., concurred.