Filed 8/26/15  Dillon v. Super. Ct. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| TERESA DILLON,<br><br>        Petitioner,<br><br>        v.<br><br>THE SUPERIOR COURT OF SAN DIEGO COUNTY,<br><br>        Respondent;<br><br>─────────────────<br><br>JASMINE RAMOS et al.,<br><br>        Real Parties in Interest. | D067321<br><br><br>(San Diego County Super. Ct. No. 37-2010-0087010-CU-OR-CTL) |


ORIGINAL PROCEEDINGS in mandate.  Randa Trapp, Judge.  Petition granted.


Wicks Law and Rory Richard Wicks for Petitioner.

No appearance for Respondent.

Sharif | Faust Lawyers and Matthew J. Faust for Real Parties in Interest.

On a prior appeal, we reversed a judgment awarding damages to real parties in

interest Jasmine Ramos and David Ramos[1] and against petitioner Teresa Dillon. The damages award grew out of a partnership between the Ramoses and Dillon.

On remand, Dillon filed a peremptory challenge to the trial judge under Code of Civil Procedure section 170.6. The trial judge denied the challenge, and Dillon filed a petition for a writ of mandate. We stayed proceedings in the trial court and issued an order to show cause.

We now grant Dillon relief on her petition. As we explain more fully below, an accounting of each partner's interest in the partnership was prepared during the course of the prior trial court proceedings. However, the trial court declined to make an award based on the accounting but instead awarded the Ramoses damages based on their contribution to the partnership; the trial court's judgment also purported to preserve the Ramoses' interest in the partnership. We reversed the prior judgment because we found the trial court erred in awarding damages without first complying with the accounting and distribution process required under Corporations Code section 16807, when, as ordered by the trial court, a partnership is dissolved. We directed that on remand the trial court comply with Corporations Code section 16807. Because on remand the trial court will be required to reexamine the previously litigated accounting issue, on remand the parties have the right to file a challenge under section Code of Civil Procedure section 170.6.[2]

_____

[1]     When appropriate for the purposes of clarity, we will refer to each of the Ramoses by their first names.

[2]     All further statutory references are to the Code of Civil Procedure.

FACTUAL AND PROCEDURAL BACKGROUND

We fully set forth the factual and procedural background of the parties' dispute in our opinion in *Ramos v. Dillon* (Oct. 31, 2014, D065489, nonpub. opn.), and we summarize the pertinent portions of that background here.

1.  Property Acquisition

Dillon is a real estate broker who owns a real estate company.  Jasmine is a licensed real estate agent who worked for Dillon's company.  Jasmine's husband, David, is also a licensed real estate agent with 25 years of experience in the construction industry, but he is not a licensed contractor.

In April 2004, the Ramoses and Dillon entered into an oral partnership for the purposes of purchasing an apartment building located in San Diego, California (the property).  Dillon and the Ramoses each contributed $250,000 toward purchasing the property.  In addition to their contributions, in order to purchase the property, in November 2004 the parties obtained a "Hard Money Loan" in the amount of $300,000. The parties did not qualify for traditional long-term financing and were aware that the Hard Money Loan required a balloon payment of $302,312.50 in October 2007.  The parties also agreed that they would share equally in the costs of repairing the property.

When the Hard Money Loan became due in 2007, the parties agreed to pursue a bank loan for as much as they could borrow to pay off the Hard Money Loan and renovate the property.  Dillon represented that because she had a higher credit score she could get a better interest rate on a bank loan.  The parties agreed that Jasmine would

quitclaim her interest in the property to Dillon for the purpose of getting a better interest rate and that the Ramoses would be added back on title to the property within 30 days. In June 2007, Dillon obtained a loan from Wells Fargo (the Wells Fargo Loan) in the amount of $520,000 in her own name in connection with the property. The Wells Fargo Loan required a monthly payment of $4,731.97 and bore interest at 6.375 percent per annum.

The parties agreed that although the Ramoses were not on the loan or on title to the property, they would be equally responsible for repaying the loan and maintaining their interest in the property. The parties substantially completed work on the property in April or May 2009, and the first tenant moved in shortly thereafter.

Because of the Ramoses' financial difficulties and their inability to meet their obligations with respect to the property, Dillon suggested memorializing those obligations. In July 2009, Dillon prepared a promissory note, which, by its terms, was secured by the Ramoses' interest in the property. The Ramoses executed the note.

By January 2010, the relationship between the parties had deteriorated and Dillon was demanding payment from the Ramoses under the terms of the note.

2.  Trial Court Proceedings

The Ramoses filed a complaint against Dillon in which they alleged various contract and tort claims against her, and Dillon filed a cross-complaint against them. The trial court initially determined that, in obtaining the note, Dillon had breached her fiduciary duty to the Ramoses and that (1) the note must be reformed to be unsecured and

4

(2) the Ramoses be placed on title to the property and on a partnership bank account. In lieu of reforming the note, the court gave Dillon the option of purchasing the Ramoses' interest in the property.

In an effort to carry out the trial court's initial determination, the parties selected an appraiser and an accountant. The appraiser estimated the "as is" value of the property was $898,000 as of July 11, 2012. At a hearing held in April 2013, the accountant testified that after more than eight years, the partnership was "pretty close to breaking even." Thereafter, the accountant issued a final report that incorporated changes requested by the court. The accountant's final report concluded that Dillon would need to pay the Ramoses $121,639.68 to purchase their interest in the property.

The Ramoses filed a posttrial brief electing a damages award based upon Dillon's breach of fiduciary duty. Specifically, they sought return of their "contributions to the partnership" totaling $478,153, consisting of their down payment of $250,000, the value of David's labor at $10,000 per month for 16 months, and the return of a $68,153 cash payment. Dillon opposed the request. In their reply, the Ramoses admitted they were seeking return of their partnership contributions, not future lost profits.

The court issued a final judgment finding that the accounting led to an inequitable result, as the Ramoses would recover little and Dillon would be unjustly enriched at their expense. Given the continuing disputes between the parties, the court concluded it would not be practical for them to continue the partnership. Based on Dillon's breach of fiduciary duty, the court found the Ramoses properly elected damages and dissolution of

5

the partnership. The trial court found the note was unenforceable and awarded judgment against Dillon in the amount of $478,153 plus prejudgment interest that had not yet been calculated.

3. Appeal

On appeal, we reversed. As we indicated, we found that under Corporations Code section 16807, upon dissolution of a partnership, the trial court was required to conduct an accounting of the partnership's assets and liabilities and distribute the partnership assets as required under the statute. We stated: "When a partnership is dissolved and its business wound up, the assets go first to pay the creditors, including partners who are creditors, and any surplus assets are generally liquidated and distributed to its members. (§ 16807, subds. (a), (b).) Generally, 'until the affairs of a partnership are wound up, the claim of a partner is equitable and can only be enforced in an accounting action, and that no personal judgment can be entered in such an action until all partnership assets have been converted into money, the debts paid and a final balance ascertained.' [Citation.] As one legal treatise explained, 'the claims of partners for reimbursement of contributions to capital, or disbursements on behalf of the partnership, or repayment of debts of the partnership to them are primarily against the partnership assets, and a personal judgment against individual partners should not be rendered unless the partnership assets are insufficient to make repayment.' [Citation.]

"Here, the trial court ordered dissolution of the partnership without complying with section 16807. This is error. Accordingly, the judgment must be reversed and the

6

matter remanded for the court to fashion an appropriate remedy based on its finding that Dillon breached her fiduciary duty to the Ramoses. As an aside, we note that where, as here, the partnership was not making a profit, dissolution may result in a seemingly unjust result for all parties." (*Ramos v. Dillon*, *supra*, D065489.)

4. Proceedings on Remand

Upon our remand, the case was reassigned to the original trial judge, and Dillon filed a challenge to the trial judge under section 170.6; as we indicated at the outset, the trial judge denied the challenge, and Dillon filed a petition for a writ of mandate.

DISCUSSION

Section 170.6, subdivision (a)(2) provides in pertinent part: "A motion under this paragraph may be made following reversal on appeal of a trial court's decision, or following reversal on appeal of a trial court's final judgment, if the trial judge in the prior proceeding is assigned to conduct a new trial on the matter. Notwithstanding paragraph (4), the party who filed the appeal that resulted in the reversal of a final judgment of a trial court may make a motion under this section regardless of whether that party or side has previously done so. The motion shall be made within 60 days after the party or the party's attorney has been notified of the assignment."

"Section 170.6 permits a peremptory challenge to be made when the same trial judge is assigned for a new trial after reversal on appeal in order to avoid potential bias on the part of a judge who had been reversed on appeal. [Citations.] Section 170.6 applies only where the matter is to be retried, not where it is remanded with instructions

7

that require the trial court to complete a judicial task not performed in the prior proceeding. In the context of this statute, a retrial is a 'reexamination' of a factual or legal issue that was in controversy in the prior proceeding. [Citations.]" (*Geddes v. Superior Court* (2005) 126 Cal.App.4th 417, 423-424 (*Geddes*), fns. omitted.) In *Geddes,* a judgment entered on an order granting summary judgment was reversed because the trial court had failed to state the reasons for, and cite the evidence supporting, its decision in favor of the defendant. On remand, the plaintiff filed a section 170.6 challenge, which was granted. The defendant filed a petition for a writ of mandate, which the Court of Appeal granted. The court found that the remand did not require any retrial of the merits of the motion for summary judgment, but only the performance of the procedure required by section 437c, subdivision (g). (*Geddes*, *supra*, 126 Cal.App.4th at p. 424.) The court found that the procedural error that gave rise to the remand did not require a new trial within the meaning of section 170.6, subdivision (a)(2) and that, accordingly, the trial court erred in granting it. (*Id*. at pp. 424-425.)

In contrast, in *First Federal Bank of California v. Superior Court* (2006) 143 Cal.App.4th 310, a section 170.6 challenge was proper on remand. In *First Federal*, the prevailing party in a contract case successfully appealed from an order denying its request for attorney fees. On remand, that party filed a challenge under section 170.6, which was denied. The Court of Appeal issued a writ requiring that the challenge be granted. "Here, it is clear that there was a trial, even limiting the examination to the attorney's fees motion. The trial court made a determination on the merits that First

8

Federal was not entitled to recover its attorney's fees.  Reversing that order, we remanded for a hearing on the amount to be awarded, a hearing that will require the presentation of evidence and factual and legal determinations as to the nature and amount of the fees sought.  Such a reexamination of an issue previously in controversy is a retrial.  The trial court erred in rejecting the motion."  (*Id*. at p. 315.)

The record here shows that at the first trial, the propriety of a disposition and award based on an accounting of the partnership's assets was litigated and rejected by the trial court; our reversal and remand for failure to make such a disposition plainly requires a reexamination of the merits of an issue previously in controversy and is a retrial within the meaning of section 170.6, subdivision (a)(2).  Thus, in denying Dillon's challenge, the trial court abused its discretion.

## DISPOSITION

Let a writ of mandate issue directing the superior court to vacate its January 12, 2015 order denying Dillon's challenge under section 170.6 and enter an order granting Dillon's disqualification motion.  The stay issued by this court on January 22, 2015 is vacated.  Costs are awarded to Dillon.

BENKE, Acting P. J.

WE CONCUR:


HUFFMAN, J.


HALLER, J.

9