Filed 9/10/20 (unmodified opn. attached)

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| ASMIK AKOPYAN, | B304957 |
| Petitioner, | (Los Angeles County Super. Ct. No. BC495137) |
| v. | |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | ORDER MODIFYING OPINION |
| Respondent; | NO CHANGE IN APPELLATE JUDGMENT |
| ZULMA UNZUETA, | |
| Real Party in Interest. | |

THE COURT:*

The above-entitled opinion filed on August 24, 2020 is modified as follows:

1. On page 6, footnote 4, replace the phrase "Judge Mohr will not recall the voir dire that took place in 2012" with "Judge Mohr will not recall the voir dire that took place in 2017."

2. On page 13, replace the last sentence of the first full paragraph that reads, "Here too, unless and until the trial court decides to grant the *Batson/Wheeler* motion (or decide it is unable to decide the motion), and orders a new trial, Dr. Akopyan's section 170.6 challenge is premature and should not be granted," with "Here too, unless and until the trial court decides to grant the *Batson/Wheeler* motion (or decide it is unable to decide the motion) and orders a new trial, Unzueta's section 170.6 challenge is premature and should not be granted."

There is no change in the judgment.

---

\*      PERLUSS, P. J.      SEGAL, J.      FEUER, J.

Filed 8/24/20 (unmodified opinion)
**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| ASMIK AKOPYAN, | B304957 |
| Petitioner, | (Los Angeles County |
| v. | Super. Ct. No. BC495137) |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Respondent; | |
| ZULMA UNZUETA, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDING; petition for writ of mandate. Anthony J. Mohr, Judge. Petition granted.

Cole Pedroza, Kenneth R. Pedroza, Matthew S. Levinson; Packer, O'Leary & Corson, Robert B. Packer and Paul M. Corson for Petitioner.

No appearance for Respondent.

McMurray Henriks and Yana G. Henriks for Real Party in Interest.

Petitioner Asmik Akopyan, M.D., seeks a writ of mandate compelling the trial court to vacate its order granting real party in interest Zulma Unzueta's peremptory challenge to Judge Anthony J. Mohr under Code of Civil Procedure section 170.6[1] filed after this court conditionally reversed the judgment entered after a jury trial in favor of Dr. Akopyan on Unzueta's claim for medical malpractice. Unzueta argued on appeal the trial court erred in denying the *Batson/Wheeler*[2] motion the court made sua sponte after Dr. Akopyan's attorney exercised peremptory challenges to six Hispanic prospective jurors out of his seven total challenges. We agreed and conditionally reversed for the limited purpose of conducting the second and third steps of the *Batson/Wheeler* inquiry as to all six challenged Hispanic jurors. (*Unzueta v. Akopyan* (2019) 42 Cal.App.5th 199, 202 (*Akopyan I*).)

Dr. Akopyan contends in his petition that section 170.6, subdivision (a)(2), which authorizes a peremptory challenge following reversal on appeal where the trial court is assigned to conduct a new trial, does not authorize a challenge following a conditional reversal where the remand is for the purpose of requiring the trial court to reconsider a pretrial *Batson/Wheeler* motion. We agree the trial court has not yet been "assigned to conduct a new trial" on remand under section 170.6, subdivision (a)(2). Therefore, the trial court should have waited to rule on the peremptory challenge until it conducted the *Batson/Wheeler* inquiry, then granted the disqualification motion only if it ordered a new trial. We now grant the petition.

---

[1]     All further undesignated statutory references are to the Code of Civil Procedure.

[2]     *Batson v. Kentucky* (1986) 476 U.S. 79 (*Batson*); *People v. Wheeler* (1978) 22 Cal.3d 258 (*Wheeler*).

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *Unzueta's Prior Lawsuit and Appeal*

Unzueta filed this action in 2012, alleging Dr. Akopyan committed medical malpractice in the delivery of Unzueta's first child.  Unzueta alleged Dr. Akopyan's negligent administration of an epidural injection resulted in paralysis of her right leg.

On the second day of jury selection, defense counsel exercised four peremptory challenges to excuse prospective jurors R. Medina, J. Quintero, G. Henriquez, and R. Villarreal.  That day the jury panel was sworn.  The next day, when voir dire continued for the selection of alternate jurors, defense counsel exercised three peremptory challenges to excuse prospective jurors D. Winfrey, D. Zaldana, and A. Marquez, two of whom were Hispanic.  Outside the presence of the jury, the trial court made a sua sponte *Batson/Wheeler* motion, which Unzueta joined.  The court then asked defense counsel to justify his peremptory challenges as to Zaldana and Marquez, but not the four Hispanic jurors who had been excused the prior day.  The court denied Unzueta's request the court inquire about the prior four jurors, stating "that water is under the bridge."  The court denied the *Batson/Wheeler* motion, finding defense counsel had justified his use of peremptory challenges as to the alternate jurors.

After a trial, the jury returned a special verdict for Dr. Akopyan, finding she was negligent in the care and treatment of Unzueta, but the negligence was not a substantial factor in causing harm to Unzueta.

On appeal, we concluded the trial court erred by failing to require defense counsel to provide his justifications for excusing

3

all six Hispanic prospective jurors, explaining, "Once the trial court found a prima facie showing of group bias, the court was required to elicit from [defense counsel] justifications for each of the six challenges forming the basis for the prima facie showing." (*Akopyan I, supra*, 42 Cal.App.5th at p. 217.)  We remanded for the trial court to require defense counsel to state his reasons for challenging prospective jurors Medina, Quintero, Henriquez, and Villarreal, and then decide in light of the record as to all six jurors whether Unzueta had proved purposeful racial discrimination.  (*Id.* at p. 223.)  We instructed the trial court that if it "finds, because of the passage of time or other reason, it is unable to conduct the evaluation, or if any of the challenges to the six Hispanic prospective jurors were based on racial bias, the court should set the case for a new trial.  If the court finds defense counsel's race-neutral explanations are credible and he exercised the six peremptory challenges in a permissible fashion, the court should reinstate the judgment."  (*Id.* at pp. 223-224.)  In all other respects, we affirmed.

B.    *Proceedings on Remand*

On remand, in a January 29, 2020 minute order, the trial court (Judge Mohr) set a hearing "re: Remand/Remittitur" for February 21, 2020.  On February 26 Unzueta filed a motion under section 170.6, subdivision (a)(2), to disqualify Judge Mohr, who had presided over the trial.[3] On March 2 the trial court granted Unzueta's disqualification motion, finding the challenge was timely filed and proper because the court on remand was required "to make a factual determination after evidentiary

---

[3]    It does not appear from the record the February 21, 2020 hearing took place.

4

hearing" and potentially a new trial on the merits. The court ordered the matter transferred to Judge John J. Kralik.

On March 16, 2020 Dr. Akopyan filed a petition for writ of mandate directing the trial court to vacate its order accepting Unzueta's peremptory challenge. Following supplemental briefing, on April 15, 2020 we issued an order to show cause why relief should not be granted. Unzueta filed a return, and Dr. Akopyan filed a reply.

## DISCUSSION

A.    *Standard of Review*

"We review questions of statutory construction de novo. Our primary task 'in interpreting a statute is to determine the Legislature's intent, giving effect to the law's purpose.'" (*California Building Industry Assn. v. State Water Resources Control Bd.* (2018) 4 Cal.5th 1032, 1041; accord, *A.J. Fistes Corp. v. GDL Best Contractors, Inc.* (2019) 38 Cal.App.5th 677, 687.) To determine whether a conditional reversal and remand for the limited purpose of conducting the second and third steps of the *Batson/Wheeler* inquiry is a "new trial" within the meaning of section 170.6, subdivision (a)(2), we look first to the language of the statute, which is "the best indication of legislative intent." (*Peracchi v. Superior Court* (2003) 30 Cal.4th 1245, 1253 (*Peracchi*); see *California Building*, at p. 1041.) "'[W]e do not construe statutes in isolation, but rather read every statute "with reference to the entire scheme of law of which it is a part so that the whole may be harmonized and retain effectiveness."'" (*Peracchi*, at p. 1253; accord, *California Building*, at p. 1041.) "'"If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the

statute's purpose, legislative history, and public policy."'" (*City of San Jose v. Superior Court* (2017) 2 Cal.5th 608, 616-617; accord, *Gattuso v. Harte-Hanks Shoppers, Inc.* (2007) 42 Cal.4th 554, 567 ["'When a statute is capable of more than one construction, '[w]e must . . . give the provision a reasonable and commonsense interpretation consistent with the apparent purpose and intention of the lawmakers, practical rather than technical in nature, which upon application will result in wise policy rather than mischief or absurdity.'"'"].)[4]

---

[4] An order determining the disqualification of a judge may be reviewed by writ of mandate. (§ 170.3, subd. (d).) Unzueta contends writ relief is not appropriate, arguing Dr. Akopyan will not suffer irreparable harm if relief is not granted because there is not an adequate record on which Judge Mohr can perform the second and third steps of the *Batson/Wheeler* analysis and, as a matter of "common sense," Judge Mohr will not recall the voir dire that took place in 2012. However, "our issuance of the order to show cause determined, in effect, that petitioners' remedy at law was inadequate [citation], thus making writ review proper." (*Bounds v. Superior Court* (2014) 229 Cal.App.4th 468, 476-477; accord, *Marron v. Superior Court* (2003) 108 Cal.App.4th 1049, 1056.) It will be up to Judge Mohr in the first instance to determine whether he can perform an evaluation of defense counsel's justifications for his peremptory challenges. The possibility that Judge Mohr may decide he cannot perform the *Batson/Wheeler* evaluation, leading him to set the case for a new trial, is not a valid basis for denying writ relief.

B.    *A Limited Remand To Conduct a* Batson/Wheeler *Inquiry After Trial Does Not Constitute a "New Trial" Under Section 170.6, Subdivision (a)(2)*

"Section 170.6 allows a defendant to bring a motion—supported by an affidavit or declaration—alleging that the assigned judge 'is prejudiced against a party or attorney' such that the party or attorney 'cannot, or believes that he or she cannot, have a fair and impartial trial or hearing before the judge.' ([*Id.*], subd. (a)(1), (2).) So long as the requirements for filing such a motion are followed, section 170.6 requires a different judge to be assigned in lieu of the originally assigned one. (*Id.*, subd. (a)(4).)" (*People v. Perez* (2018) 4 Cal.5th 421, 439; accord, *Peracchi, supra*, 30 Cal.4th at p. 1248 ["Section 170.6 permits a party in civil and criminal actions to move to disqualify an assigned trial judge on the basis of a simple allegation by the party or his or her attorney that the judge is prejudiced against the party."].)

Section 170.6, subdivision (a)(2), provides in relevant part, "A motion under this paragraph may be made following reversal on appeal of a trial court's decision, or following reversal on appeal of a trial court's final judgment, if the trial judge in the prior proceeding is assigned to conduct a new trial on the matter. Notwithstanding paragraph (4), the party who filed the appeal that resulted in the reversal of a final judgment of a trial court may make a motion under this section regardless of whether that party or side has previously done so. The motion shall be made within 60 days after the party or the party's attorney has been notified of the assignment."

In *Peracchi*, a criminal defendant petitioned for a writ of mandate after the trial court denied his disqualification motion

7

under an earlier version of section 170.6, subdivision (a)(2),[5] after the Court of Appeal reversed his conviction on one of two counts and remanded to the trial court for a retrial of the reversed count or resentencing. (*Peracchi, supra*, 30 Cal.4th at p. 1250.) On remand, the case was assigned to the judge who had presided at trial. (*Ibid.*) The defendant petitioned to disqualify the judge pursuant to section 170.6. (*Peracchi*, at p. 1250.) At a hearing, the judge "announced that if the prosecution determined that the reversed count should be retried, the challenge would be granted. If, on the other hand, the prosecution determined not to retry the reversed count and the matter merely required a new sentencing hearing, the challenge would be denied." (*Ibid.*) After the prosecutor stated the reversed count would not be retried, the judge denied the challenge and set the matter for a sentencing hearing. (*Ibid.*)

To determine whether the trial court improperly denied the defendant's challenge under section 170.6, the Supreme Court looked to the meaning of a "new trial," which Penal Code section 1179 defined as "'a reexamination of the issue in the same Court, before another jury, after a verdict has been given.'" (*Peracchi*, at p. 1253.) The Court also considered that under Penal Code section 1180, "'[t]he granting of a new trial places the parties in the same position as if no trial had been had. All the testimony must be produced anew, and the former verdict or finding cannot be used or referred to, either in evidence or in argument . . . .'" (*Peracchi*, at p. 1253.) The Court reasoned that the trial court's

---

[5] The court in *Peracchi* relied upon section 170.6, former subdivision (2) (*Peracchi, supra*, 30 Cal.4th at p. 1250), which as part of a 2003 amendment was moved to section 170.6, subdivision (a)(2), without substantive change.

"function at sentencing . . . ensures that resentencing cannot occur 'as if no trial had been had.'" (*Id*. at p. 1254.)  To the contrary, the resentencing hearing is "the occasion on which the court pronounces the judgment *arising from the verdict*." (*Ibid*.) The Court acknowledged that at sentencing "the court's function may include resolution of certain factual issues that relate to the choice of appropriate sentence," but explained the trial court "resolves those issues in light of what occurred at trial." (*Ibid*.) Further, "The trial court is considered to be in the best position to conduct the resentencing hearing.  The preference for a judge who is well informed about the case serves the interests of both parties, and an alternative practice would impose heavy burdens on scarce judicial resources." (*Ibid*.)

The *Peracchi* court concluded the term "new trial," as used in section 170.6, subdivision (a)(2), should be interpreted by reference to the definition the term is given in the Code of Civil Procedure or the Penal Code, depending on which code applies. (*Peracchi, supra,* 30 Cal.4th at p. 1261.)  As the Supreme Court observed, section 656 of the Code of Civil Procedure, which "has been construed quite broadly," defines a "new trial" as "a re-examination of an issue of fact in the same court after a trial and decision by a jury, court or referee." (*Peracchi*, at p. 1259; accord, *Burdusis v. Superior Court* (2005) 133 Cal.App.4th 88, 92 (*Burdusis*).)  The Supreme Court rejected the argument "a section 170.6 challenge should be permitted at any hearing in which there is *any* potential for bias," and that "the Legislature intended to protect, in *all* circumstances, parties who have prevailed on appeal from the presumed ire or potential bias of trial judges whose rulings have been reversed." (*Peracchi*, at p. 1261.)

As we explained in *Geddes v. Superior Court* (2005)
126 Cal.App.4th 417 (*Geddes*), appellate courts have included
within the definition of a "new trial" in civil cases under section
170.6, subdivision (a)(2), "(1) reversal of a summary judgment
motion on the merits; (2) remand for an evidentiary hearing and
factual determination after a bench trial in a civil action where
the judgment was reversed on appeal; [and] (3) dismissal of a
civil action at the pleading stage where the matter was remanded
for a factual determination on the merits of the defendants' anti-
SLAPP motion . . . ." (*Geddes*, at p. 423.)

However, where the Court of Appeal reverses and remands
for redetermination of a motion that does not involve an
evaluation of the merits of the underlying action, section 170.6,
subdivision (a)(2), is not triggered. (See *Burdusis, supra*,
133 Cal.App.4th at p. 93 [reversal of ruling on pretrial motion for
class certification did not trigger § 170.6 because the trial court in
ruling on the motion "did not address the merits, nor did it
terminate the action, [and thus] there has been no trial"]; *State
Farm Mutual Automobile Ins. Co. v. Superior Court* (2004)
121 Cal.App.4th 490, 502 (*State Farm*) [reversal of trial court's
pretrial motion determining applicable law did not support
challenge under § 170.6, subd. (a)(2), because the trial court did
not yet "'try' any of plaintiffs' causes of action; it merely
decided . . . which state's law *will* apply *when* the case is tried or
otherwise adjudicated"].)

A *Batson/Wheeler* hearing—like motions for class
certification and to determine the applicable law at issue in
*Burdusis* and *State Farm*—is not a trial because it does not
terminate the case or resolve its merits. As the *State Farm* court
reasoned, "Just as an in limine motion is not itself a 'trial,'
neither was State Farm's Motion to Determine Applicable Law."

10

(*Id.* at p. 503.)  So too here.  A *Batson/Wheeler* motion is a pretrial motion to evaluate whether a party's exercise of peremptory challenges against potential jurors was impermissibly motivated by purposeful discrimination.  (See *People v. Smith* (2018) 4 Cal.5th 1134, 1146-1147 [identifying *Batson/Wheeler* as a pretrial issue]; *People v. Williams* (2013) 56 Cal.4th 630, 649 [same].)

In *Akopyan I*, we remanded for the trial court to reconsider its denial of its sua sponte *Batson/Wheeler* motion in light of defense counsel's justifications for his first four peremptory challenges.  (*Akopyan I, supra*, 42 Cal.App.5th at p. 223.)  We instructed the court to set the case for a new trial only if it first found it was unable to conduct the *Batson/Wheeler* evaluation (because of the passage of time or other reason), or any of the challenges to the six Hispanic prospective jurors were based on racial bias.  (*Ibid.*)  We further instructed that if the court found after evaluation of defense counsel's justifications there was no *Batson/Wheeler* violation, the court should reinstate the judgment.  (*Id.* at pp. 223-224.)

Unzueta argues that even if the trial court's *Batson/Wheeler* determination was not a trial because it did not resolve the underlying merits or terminate the case, her motion to disqualify Judge Mohr was proper because it was made after a trial and entry of judgment in the case.  Not so.  As we explained in *Geddes, supra*, 126 Cal.App.4th at page 424, "a retrial is a 'reexamination' of a factual or legal issue that was in controversy in the prior proceeding."  In *Geddes*, we reversed and remanded the trial court's grant of summary judgment based on the court's failure to comply with the requirement it specify the reasons for granting the motion.  (*Ibid.*)  Although a reversal of a summary judgment motion on the merits is considered a grant of a new

11

trial (*ibid*; *State Farm, supra*, 121, Cal.App.4th at p. 497), we concluded our reversal of the judgment did not support a peremptory challenge under section 170.6, subdivision (a)(2), because "we did not remand the case for reconsideration of the merits of the ruling, and such a fundamental reexamination of the motion [was] unnecessary." (*Geddes*, at p. 424; accord, *Paterno v. Superior Court* (2004) 123 Cal.App.4th 548, 560 (*Paterno*) [reversal of determination of liability at trial as to one defendant and remand for a trial on damages was not a "new trial" for purposes of peremptory challenge because under § 656, the remand did not require a reexamination of a factual or legal issue that was in controversy in the first trial].)[6]

As the *Paterno* court explained, "All liability issues have been fully and finally settled by our decision in *Paterno II*. The only task the judge must complete is to conduct a trial to determine the amount of damages petitioners have suffered as a result of the flood, and to enter judgment accordingly. Judge Golden's function at this point is not to go back and revisit any factual or legal terrain that has thus far been traversed, but to go *forward* with a trial on the issue of damages. While the analogy is not perfect, the judge's assignment after remand here bears considerable resemblance to the postverdict sentencing hearing

---

[6]      *First Federal Bank of California v. Superior Court* (2006) 143 Cal.App.4th 310, relied on by Unzueta, is not to the contrary. There, this court concluded a section 170.6 challenge on remand following affirmance of a judgment after trial, but reversal of the denial of an attorneys' fees motion, was proper because the court treated reconsideration of the attorneys' fees motion as a new trial. As discussed, the *Batson/Wheeler* pretrial motion did not constitute a trial on the merits for purposes of section 170.6.

12

conducted by the trial judge in *Peracchi, supra*, 30 Cal.4th 1245." (*Paterno, supra*, 123 Cal.App.4th at p. 560.)

Although our conditional reversal of the judgment requires the trial court to reexamine its prior *Batson/Wheeler* ruling following a full trial on the merits, and the trial court's resolution of that inquiry may result in the setting of a new trial, as in *Geddes* and *Paterno*, we did not remand for reconsideration of a ruling on the merits of the case. Similarly, the reversal in *Peracchi*, *supra*, 30 Cal.4th at page 1249 followed a trial on the merits, and as the Supreme Court observed, "had the prosecution determined to retry petitioner on the reckless driving count, a new trial on that count would have ensued and the peremptory challenge properly would have been granted." (*Id.* at p. 1254, fn. 5.) But in light of the decision by the prosecutor not to retry the petitioner, the resentencing following a trial did not support a preemptory challenge. (*Id.* at pp. 1254, fn. 5, 1257-1258.) Here too, unless and until the trial court decides to grant the *Batson/Wheeler* motion (or decide it is unable to decide the motion), and orders a new trial, Dr. Akopyan's section 170.6 challenge is premature and should not be granted.[7]

---

[7] *Stubblefield Construction Co. v. Superior Court* (2000) 81 Cal.App.4th 762, 764-765, relied on by Unzueta, is not to the contrary. There, the Court of Appeal determined section 170.6 permitted a new peremptory challenge on remand after partial reversal of the trial court's grant of summary judgment. (*Stubblefield*, at p. 764.) In so doing, the court stated, "Although there was no full trial of the matter in this case, a final judgment was entered. Our partial reversal requires that the case be reopened, with an actual trial if necessary; furthermore, our partial reversal reflected our view that the trial judge erred in a crucial decision of law." (*Id.* at p. 766.) As discussed, resolution

We also find instructive the *Peracchi* court's consideration of the fact "a defendant's interest in a full and fair sentencing hearing usually is best served when the hearing is presided over by the same judge who heard the evidence at trial." (*Peracchi, supra*, 30 Cal.4th at p. 1261.) The same policy consideration weighs in favor of having Judge Mohr, who observed the demeanor of the jurors and defense counsel in ruling on his sua sponte *Batson/Wheeler* motion, preside over the reevaluation of the motion on remand because he is uniquely well-positioned to evaluate defense counsel's justifications. The Legislature's concern for the potential that section 170.6 "'may be abused by parties seeking . . . to obtain a favorable judge'" (*Maas v. Superior Court* (2016) 1 Cal.5th 916, 973) also cautions us against a broad reading of section 170.6, subdivision (a)(2), to authorize a peremptory challenge to litigants after a conditional reversal on appeal where remand is for the limited purpose of resolving a pretrial motion such as this.

---

of a motion for summary judgment "constitute[s] a 'trial'" for purposes of section 170.6, subdivision (a)(2). (*State Farm, supra*, 121 Cal.App.4th at p. 501.) We do not read *Stubblefield* to mean section 170.6 permits a new challenge after a reversal any time the trial court may conduct "an actual trial if necessary" regardless of the nature of the reversal or the judicial task the judge is called on to perform. (*Stubblefield*, at p. 767.) Further, such a broad reading of section 170.6 runs counter to the Supreme Court's holding in *Peracchi, supra,* 30 Cal.4th at pages 1261 to 1262, as well as our holding in *Burdusis, supra*, 133 Cal.App.4th at page 90, in which we concluded section 170.6 does not permit a peremptory challenge on remand following reversal of an order resolving a pretrial motion that does not terminate or address the merits of the case.

We reject Unzueta's argument her disqualification motion was appropriate because this court's remand required the trial court to perform more than a "ministerial" act. Contrary to Unzueta's contention, "application of section 170.6(a)(2) does not rest solely on whether the trial judge is to perform a ministerial task after reversal." (*State Farm, supra*, 121 Cal.App.4th at p. 503; accord, *Paterno, supra*, 123 Cal.App.4th at p. 561, fn. 8 ["We disagree . . . that whenever a trial judge on remand 'will be acting in more than a ministerial manner' the hearing constitutes a 'new trial' for purposes of section 170.6(a)(2)."].)[8]

Unzueta's argument "potential for bias exists" if Judge Mohr presides over the *Batson/Wheeler* inquiry is also not persuasive. Although "[p]rotecting parties from the bias that a trial judge might exhibit after a reversal is a laudable goal, [it is]

---

[8] It is true that if the judicial task to be performed on remand is ministerial in nature, "no new peremptory challenge is permitted by section 170.6." (*Geddes, supra*, 126 Cal.App.4th at p. 424, fn. 4.) But the converse is not true. Section 170.6 does not permit a new challenge after reversal for all nonministerial tasks. (See *Peracchi, supra*, 30 Cal.4th at p. 1260 [criminal sentencing is not a ministerial duty, but no new § 170.6 challenge is permitted on remand for resentencing]; *Andrew M. v. Superior Court* (2020) 43 Cal.App.5th 1116, 1120-1121, 1127 [conditional reversal and limited remand to juvenile court to conduct a transfer hearing pursuant to Proposition 57, the Public Safety and Rehabilitation Act of 2016 (Cal. Const., art. I, § 32) "is not . . . a 'new trial' under section 170.6 merely because the court will exercise discretion or make factual findings"]; *Burdusis, supra*, 133 Cal.App.4th at p. 90 [no new § 170.6 challenge permitted on remand following reversal of order denying class certification to allow trial court to consider new decisional law filed after the appeal].)

15

one that does not take precedence over every other element of a fair trial.  There is no indication that the Legislature intended section 170.6, subdivision [(a)](2) to permit a peremptory challenge whenever there exists even a *potential* for bias arising out of a judge's reaction to being reversed on appeal . . . ." (*Peracchi, supra*, 30 Cal.4th at p. 1262; accord, *Geddes, supra*, 126 Cal.App.4th at pp. 424-425.)

We acknowledge Unzueta's concern she would be deprived of her right to file a peremptory challenge as to Judge Mohr if she did not promptly file her peremptory challenge.  Section 170.6, subdivision (a)(2), authorizes a peremptory challenge following a reversal "if the trial judge in the prior proceeding is assigned to conduct a new trial on the matter. . . .  The motion shall be made within 60 days after the party or the party's attorney has been notified of the assignment."  Because Judge Mohr has not yet ordered a new trial, Unzueta has not yet been "notified" of Judge Mohr's assignment to handle a possible new trial on remand.  But even if we were to read the trial court's January 29, 2020 minute order setting a hearing after remand as notification of a possible new trial, the court should have deferred ruling on Unzueta's section 170.6 motion pending resolution of the *Batson/Wheeler* inquiry.  Just as the trial court in *Peracchi, supra*, 30 Cal.4th at page 1250 announced the defendant's peremptory challenge would be granted if the prosecution elected to retry the reversed count, but denied if it did not, Judge Mohr likewise could have announced he would grant the challenge only if he ordered a new trial, then waited to rule on the challenge until the conclusion of the *Batson/Wheeler* hearing.  The court's determination of the section 170.6 challenge at that point would have been timely because it would precede any ruling on the contested issues at trial.  (See *Frisk v. Superior Court* (2011) 200 Cal.App.4th 402,

16

408 ["Trial courts must act upon peremptory challenges at the first available opportunity, before ruling on contested issues, lest this important right be lost or diminished through procedural tactics or maneuvers."].)

## DISPOSITION

The petition is granted.  A peremptory writ of mandate shall issue directing respondent superior court to vacate its March 2, 2020 order granting Unzueta's motion to disqualify Judge Mohr and to enter a new order deferring a ruling on the motion until after resolution of the *Batson/Wheeler* inquiry. Dr. Akopyan is to recover her costs in this writ proceeding.

FEUER, J.

We concur:

PERLUSS, P. J.

SEGAL, J.

17